(239 P.3d 871)
No. 102,583

In the Matter of the Care and Treatment of DAVID H. SIPE.

Opinion filed September 24, 2010.

*Geoffrey Clark*, of Wilbert & Towner, P.A., of Pittsburg, for appellant.

No appearance by appellee.

Before MCANANY, P.J., CAPLINGER and BUSER, JJ.

CAPLINGER, J.: David Sipe appeals the district court's denial of his petition for discharge from the Sexual Predator Treatment Program at Larned State Security Hospital (Larned). Because we find that Sipe established probable cause entitling him to a hearing on the issue of whether he is safe to be placed in transitional release, we remand to the district court for a hearing pursuant to K.S.A. 2009 Supp. 59-29a08(c)(1).

## FACTUAL AND PROCEDURAL BACKGROUND

In 1994, Sipe was convicted of aggravated criminal sodomy of a child under the age of 14 and aggravated indecent liberties with a child over 14 and under 16. In 2000, Sipe was involuntarily civilly committed to the custody of the Secretary of the Kansas Depart-

ment of Social and Rehabilitation Services (SRS) after stipulating he met the statutory criteria of a sexually violent predator under the Sexually Violent Predator Act (SVPA), K.S.A. 59-29a01 *et seq.*

According to his initial examination and report from Larned, Sipe met the criteria for "Pedophilia, Sexually Attracted to Females, Nonexclusive Type; and Antisocial Personality Disorder" and had a "very high risk of reoffending."

Annually from 2001 through 2007, SRS examined Sipe's mental condition as required by K.S.A. 2009 Supp. 59-29a08(a). On each occasion SRS recommended that Sipe continue to be considered a sexually violent predator and remain in SRS custody. Sipe acknowledged receipt of written notice of the SRS reviews and notice of his right to petition for discharge over SRS's objection. Each year, the district court reviewed SRS's reports, noted that Sipe had not petitioned for discharge, and accepted SRS's findings and recommendations.

However, in January 2008, Sipe filed a pro se petition seeking discharge from treatment or discharge to transitional release. In his petition, Sipe alleged he had successfully completed all prerequisite treatments and that his mental condition and personality disorder had sufficiently changed such that it was safe for him to be discharged from treatment or to transitional release. Sipe further alleged he was indigent and requested appointment of an expert to examine him and provide testimony supporting his petition. Sipe also moved for appointment of counsel. The district court appointed counsel and scheduled a hearing to consider Sipe's request for appointment of an expert.

After performing the annual examination of Sipe's mental condition in March 2008, Mayda Nel Strong, Ph.D, found that Sipe had progressed in his treatment program but had been "unable to complete all course requirements" and had maintained satisfactory employment since March 2007. Dr. Strong concluded that Sipe's prognosis was "good but guarded due to his animosity towards the treatment program," that he remained a sexually violent predator, and that it would not be safe to place Sipe in transitional release. SRS concluded Sipe's mental condition or personality disorder had not sufficiently changed for it to be safe for him to be at large, and

did not authorize Sipe to petition for discharge. In May 2008, SRS forwarded the 2008 annual review to the district court, which then appointed Bruce Nystrom, Ph.D, to examine Sipe.

Dr. Nystrom's testing revealed Sipe had "no indications of a significant psychological disorder." However, Nystrom noted that the results of one test indicated "[s]ome degree of cognitive distortion and justification of his sexual deviance" and he concluded Sipe had "a personality based tendency to be immature, self-centered, and demanding of attention and affection." Nystrom further concluded Sipe represented a " 'medium' " risk of reoffending and recommended he be transferred to transitional release.

Following a February 2009 hearing at which the district court considered reports from Drs. Strong and Nystrom and heard arguments from counsel, the district court concluded Sipe failed to establish probable cause that his mental condition or personality disorder had sufficiently changed, and denied Sipe's petition to seek discharge. The court stated:

"And the reasons for this finding are going to be from the two reports that have been submitted, specifically, I'll start with Dr. Nystrom's. Dr. Nystrom's report indicates that there is some degree of cognitive distortion and justification of a sexual deviance. He does put in his report that the current psychological test results do not indicate a significant psychological disorder.

"I would agree with the State that the initial confinement of Mr. Sipe was also based on the diagnosis of pedophilia. And Mr. Nystrom's report fails to give the Court any basis—well, any basis to find probable cause that the pedophilia diagnosis has in someway changed.

"In fact, I'm going to read again from Nystrom's report; actuarial risk assessments pointed to a medium risk of future sex offending. That's a concern of the Court's. And in Dr. Nel Strong's report, and I'm actually looking at her conclusion; finds and indicates that Mr. Sipe remains a sexually violent predator.

"We've made a record regarding Mr. Sipe's lack or reluctance to complete the progression of the treatment programs. And, quite frankly, I can't see Mr. Sipe ever getting any kind of a favorable report until he either cooperates or whatever the problem is out there. He needs to cooperate, gets the initiative to move through the remaining steps of that program.

"Therefore, under 59-029a08 [sic] the Court finds that there's not probable cause existing to believe that his mental abnormality of [sic] personality disorder has so changed that he's safe to be placed in transitional release."

In the journal entry denying Sipe's petition, the district court reiterated that its ruling was based upon Dr. Nystrom's report find-

ing Sipe to be at medium risk of reoffending. Additionally, the court noted that Sipe was originally diagnosed with pedophilia and that Nystrom's report did not suggest that he had been cured of that condition.

### APPLICATION OF K.S.A. 2009 SUPP. 59-29a08

In this appeal of the district court's denial of his petition for discharge, Sipe contends that by impermissibly weighing conflicting expert reports, the district court improperly applied the probable cause standard.

#### Overview of SVPA

To obtain an order of involuntary civil commitment, the State is required to prove beyond a reasonable doubt that the person it seeks to commit is a sexually violent predator. K.S.A. 2009 Supp. 59-29a07(a). A sexually violent predator is "any person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in repeat acts of sexual violence." K.S.A. 2009 Supp. 59-29a02(a). The term "personality disorder" is not defined in the SVPA, but "mental abnormality" is defined as "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others." K.S.A. 2009 Supp. 59-29a02(b). The term "sexually violent offense" is also defined by statute. K.S.A. 2009 Supp. 59-29a02(e).

If a unanimous jury or a trial court determines beyond a reasonable doubt that the person the State seeks to commit is a sexually violent predator, the court shall commit the person to SRS custody "until such time as the person's mental abnormality or personality disorder has so changed that the person is safe to be at large." K.S.A. 2009 Supp. 59-29a07(a).

Once involuntarily committed, a sexually violent predator is entitled to an annual review of his or her mental condition. Following the review, the Secretary of the SRS is required to provide the committed person with written notice of the person's right to pe-

tition for discharge over SRS's objection, and a form to waive that right. The committed person may retain, or if indigent may request appointment of, a professional to perform an independent examination. SRS is required to forward a copy of the annual review, including a copy of the written notice and waiver form, to the district court that initially committed the person. K.S.A. 2009 Supp. 59-29a08(a).

The court must then determine whether continued commitment is warranted. The SVPA contemplates a court hearing for that determination. The committed person is not entitled to be present at the hearing but has a right to be represented by counsel at the hearing and may petition for discharge during the hearing. K.S.A. 2009 Supp. 59-29a08(a), (b); *In re Care & Treatment of Miles*, 42 Kan. App. 2d 471, 474, 213 P.3d 1077 (2009).

At the annual review hearing, "[i]f the court . . . determines that probable cause exists to believe that the person's mental abnormality or personality disorder has so changed that the person is safe to be placed in transitional release, then the court shall set a hearing on the issue." K.S.A. 2009 Supp. 59-29a08(c)(1). "Transitional release" is defined as "any halfway house, work release, sexually violent predator treatment facility or other placement designed to assist the person's adjustment and reintegration into the community once released from commitment." K.S.A. 2009 Supp. 59-29a02(i).

If the court makes a probable cause determination and sets a second hearing, the State is required to prove beyond a reasonable doubt "that the committed person's mental abnormality or personality disorder remains such that the person is not safe to be placed in transitional release and if transitionally released is likely to engage in acts of sexual violence." K.S.A. 2009 Supp. 59-29a08(c)(3). At the second hearing, the committed person is afforded the same rights as he or she was entitled to during the initial commitment proceeding. K.S.A. 2009 Supp. 59-29a08(c)(3). "If, after the hearing, the court or jury is convinced beyond a reasonable doubt that the person is not appropriate for transitional release, the court shall order that the person remain in secure commitment. Otherwise,

the court shall order that the person be placed in transitional release." K.S.A. 2009 Supp. 59-29a08(d).

*Standard of Review*

Preliminarily, Sipe points out that the SVPA statutory scheme does not specify the applicable standard of review of a probable cause determination under K.S.A. 2009 Supp. 59-29a08, but he suggests we apply a de novo review.

Sipe argues de novo review is appropriate because: (1) de novo review is applied to similar probable cause determinations made at the preliminary hearing stage of a criminal proceeding; (2) other jurisdictions with statutes similar to the SVPA apply a de novo standard to probable cause determinations; and (3) this court's ability to review the limited evidence presented at an annual review hearing is the same as that of the district court.

As noted above, at an annual review hearing, "[i]f the court . . . determines that probable cause exists to believe that the person's mental abnormality or personality disorder has so changed that the person is safe to be placed in transitional release, then the court shall set a hearing on the issue." K.S.A. 2009 Supp. 59-29a08(c)(1).

When the State initially files a petition seeking commitment of an alleged sexually violent predator, a district court must determine if probable cause exists to believe that the person is a sexually violent predator. K.S.A. 59-29a05(a). In that context, our Supreme Court has explained: "The probable cause determination in a sexual predator case must be compared to that of a criminal trial and requires evidence sufficient to cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief that the accused is a sexually violent predator." *In re Care and Treatment of Hay*, 263 Kan. 822, 834, 953 P.2d 666 (1998). Although the *Hay* court defined probable cause in the SVPA context, the court did not identify the appropriate standard of review as it found the challenge to the district court's probable cause determination in that case to be procedurally faulty. 263 Kan. at 834-35.

Nevertheless, since a probable cause determination under the SVPA is comparable to the probable cause determination made at the preliminary hearing stage of a criminal proceeding, it would

seem appropriate for us to apply the same de novo standard of review under the SVPA as we apply in the criminal context. See, *e.g.*, *State v. Horton*, 283 Kan. 44, 57, 151 P.3d 9 (2007); *State v. Romo-Uriarie*, 33 Kan. App. 2d 22, 27, 97 P.3d 1051, *rev. denied* 278 Kan. 851 (2004).

Moreover, the United States Supreme Court has held that probable cause determinations generally are reviewed de novo. *Ornelas v. United States*, 517 U.S. 690, 699, 133 L. Ed. 2d 911, 116 S. Ct. 1657 (1996); see also *Det. of Petersen*, 145 Wash. 2d 789, 799-801, 42 P.3d 952 (2002) (discussing *Ornelas* and concluding when a trial court makes factual findings at show cause hearing under Washington's sexually violent predator civil commitment statute, the legal conclusion as to whether those facts establish probable cause is reviewed de novo). But see *United States v. Wolny*, 133 F.3d 758, 762 (10th Cir. 1998) (limiting *Ornelas* to search and seizure context); *State v. Hicks*, 282 Kan. 599, 602-13, 147 P.3d 1076 (2006) (citing *Ornelas* but retaining deferential standard for probable cause determination in context of magistrate's decision to issue a search warrant).

Finally, as Sipe points out, when the district court's probable cause determination at an annual review hearing is based on expert reports and arguments of counsel, this court is in the same position as the district court to determine whether the evidence is sufficient to establish probable cause. See *Crawford v. Hrabe*, 273 Kan. 565, 570, 44 P.3d 442 (2002) (when controlling facts are based upon written or documentary evidence, appellate court has same opportunity as trial court to examine and consider the evidence and to determine de novo what the facts establish).

Therefore, when as here the district court's probable cause determination under K.S.A. 2009 Supp. 59-29a08 is based solely on documentary evidence, we review that determination using a de novo standard.

*Existence of probable cause to permit second hearing*

Applying a de novo standard, we next consider whether the district court erred in failing to find probable cause requiring it to conduct a hearing under K.S.A. 2009 Supp. 59-29a08(c)(1).

As noted, at an annual review hearing, "[i]f the court . . . determines that probable cause exists to believe that the person's mental abnormality or personality disorder has so changed that the person is safe to be placed in transitional release, then the court shall set a hearing on the issue." K.S.A. 2009 Supp. 59-29a08(c)(1).

Initially, Sipe contends the district court impermissibly weighed conflicting reports in determining the existence of probable cause justifying a second hearing. And while Sipe cites support from other jurisdictions with statutes similar to the SVPA, we find it unnecessary to address this contention in light of our determination that we apply a de novo review to probable cause determinations under the SVPA. Instead, the only question we must decide is whether the facts presented at the hearing were sufficient to establish probable cause.

Although K.S.A. 2009 Supp. 59-29a08 does not assign the burden of proof at an annual review hearing, as a general rule the burden of proof lies with the moving party or the party asserting the affirmative of an issue. *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, 412, 681 P.2d 1038 (1984); *In re G.M.A.*, 30 Kan. App. 2d 587, 593, 43 P.3d 881 (2002). Accordingly, when a person committed under the SVPA petitions the court for discharge at an annual review hearing, that person must bear the burden to establish probable cause for a second hearing on the issue.

Moreover, as *Hay* instructs, a probable cause determination under the SVPA is comparable to that made in a criminal proceeding. *Hay*, 263 Kan. at 834. In a criminal proceeding, the State bears the burden to establish probable cause, the district court must consider the evidence in the light most favorable to the State, and the court's task is to determine whether probable cause exists to warrant a trial on the merits. *Romo-Uriarie*, 33 Kan. App. 2d at 26-28.

Accordingly, because a sexually violent predator bears the burden to establish probable cause at an annual review hearing, the district court must consider the evidence in the light most favorable to the committed person and resolve all conflicting evidence in that person's favor. Further, the court's task is not to make a final determination on the committed person's petition, but rather to

determine whether there is sufficient evidence to cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief that the committed person's mental abnormality or personality disorder has so changed that the person is safe to be placed in transitional release. See *Hay*, 263 Kan. at 834 (defining probable cause in SVPA context); *Romo-Uriarie*, 33 Kan. App. 2d at 27 (citing guiding principles for probable cause determination in criminal cases). For foreign cases reaching a similar conclusion see *In re Commitment of Allen*, 927 So. 2d 1070, 1074 (Fla. Dist. App. 2006); *Det. of Elmore*, 162 Wash. 2d 27, 37, 168 P.3d 1285 (2007); and *Det. of Petersen*, 145 Wash. 2d at 798-99.

In this case, the evidence at the annual review hearing consisted of reports from Dr. Nystrom, an independent examiner, and Dr. Strong, who performed Sipe's 2008 annual review. As noted earlier, Sipe's initial Larned examination in 1999 indicated that Sipe met the criteria for Pedophilia, Sexually Attracted to Females, Nonexclusive Type and Antisocial Personality Disorder, and that Sipe had a "very high risk of reoffending."

Dr. Strong's 2008 report found Sipe had progressed in his treatment program and Sipe's prognosis was "good but guarded due to his animosity towards the treatment program." According to Strong, Sipe remained a sexually violent predator whose mental abnormality was such that it was "likely that he will engage in repeated acts of sexual violence." Accordingly, Strong recommended against placing Sipe in transitional release.

Dr. Nystrom's report concluded Sipe showed a marked lack of insight into the underlying causes of his behavior; a tendency to be immature, self-centered, and demanding attention and affection from others; and "[s]ome degree of cognitive distortion and justification of his sexual deviance." However, unlike Dr. Strong, Dr. Nystrom concluded Sipe had no current indications of a "significant psychological disorder" and presented a " 'medium' risk of future sex offending given cautions about the prediction of low base rate behaviors." Further, Dr. Nystrom recommended Sipe be permitted to transfer to the transitional living portion of the treatment program.

The district court recognized Dr. Nystrom's conclusions that Sipe had no "significant psychological disorder" and recommendation that Sipe be transferred to the transitional release program. Nevertheless, the district court then appeared to view the facts in a light more favorable to the State when it relied upon Dr. Strong's report indicating Sipe remained a sexually violent predator who was "likely" to reoffend and who should not be transferred to transitional release.

However, when viewed in the light most favorable to Sipe, the facts presented at the hearing were sufficient to cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief that Sipe's mental abnormality or personality disorder have so changed that he is safe to be placed in transitional release.

As noted, our probable cause determination does *not* entitle Sipe to transitional release. Instead, based upon the probable cause finding, the district court is now required to conduct an evidentiary hearing on the issue of whether transitional release is appropriate. At that hearing, the State again has the burden "to prove beyond a reasonable doubt that the committed person's mental abnormality or personality disorder remains such that the person is not safe to be placed in transitional release and if transitionally released is likely to engage in acts of sexual violence." K.S.A. 2009 Supp. 59-29a08(c)(3).

Accordingly, we reverse the district court and remand with directions to conduct an evidentiary hearing pursuant to K.S.A. 2009 Supp. 59-29a08(c)(1).