NOT DESIGNATED FOR PUBLICATION

No. 117,598

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of
ANTHONY CLARK.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; ROBERT P. BURNS, judge. Opinion filed December 8, 2017. Reversed and remanded with directions.

*Christopher Cuevas*, of Kansas City, for appellant.

*Dwight R. Carswell*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., ATCHESON, J., and WALKER, S.J.

PER CURIAM:  Anthony Clark, previously adjudicated as a sexually violent predator (SVP), appeals the district court's ruling that probable cause did not exist to find his condition to be so changed that he would be safe to place on transitional relief. Clark argues that, when viewed in a light most favorable to him, there was sufficient evidence to find that probable cause existed. After reviewing the record, we agree with Clark and therefore reverse the district court's ruling and remand for further hearing.

Clark incidentally raises an admissibility of the evidence argument, but we find that issue has not been properly preserved for appeal and, in any event, is not determinative to the outcome of this appeal.

1

Between 1976 and 1991 Clark was convicted of at least four sexual crimes against children. Clark also admitted to sexually touching a 2 1/2-year-old girl in 1985, but no arrest or conviction occurred as a result of that incident.

In 2002, as Clark was nearing release from prison, the State petitioned for Clark to be deemed an SVP under the Sexually Violent Predator Act, K.S.A. 59-29a01 et seq. The court found that Clark qualified as an SVP, and he was civilly committed to the Sexual Predator Treatment Program (SPTP).

The SPTP utilized a tiered phase system to determine how a resident was progressing with treatment. At some point Clark reached Phase Five, which focused on readying residents for transitional release. As part of Phase Five, Clark was required to undergo polygraph examinations. In 2009 and 2010, Clark had poor results on his polygraph test and was moved back to Phase Four. In 2010 and 2011, Clark again had poor results on his polygraph tests, as well as boundary violations with staff, and he was once again moved back, this time to Phase Three. Clark remained in Phase Three until the SPTP changed their categorization system in late 2016. After the change, Clark was placed in Tier One, Skill Acquisition.

As part of his commitment, Clark received annual examinations of his mental condition as required by K.S.A. 2015 Supp. 59-29a08. After Clark's 2015 annual review, the district court signed an order concluding that Clark remained an SVP. Clark filed a motion requesting the court to alter or amend its judgment. The State requested a hearing on Clark's 2015 annual review.

In March 2017 the district court held a hearing to determine whether there was probable cause to believe Clark had so changed that he would be safe for transitional

release. At the hearing Clark's former therapist, Keri Applequist, who had authored Clark's 2015 annual review, testified that Clark was not safe for transitional release. During her testimony, Applequist explained that in 2009 Clark took a polygraph to determine if what he was reporting regarding his sexual fantasies and behavior was accurate. Clark's polygraph results led to his community outings being suspended due to public safety concerns. From that point, Clark's progress began to revert, he continued to provide poor polygraph results, and was not actively participating in group sessions.

Applequist also explained that she had attempted to modify the polygraph procedure for Clark in December 2016; instead of testing for the whole time back to the last passing polygraph, they would only test for the last period. As of March 2017 Clark had not elected to take another polygraph under the modified procedure. Ultimately, Applequist believed that if Clark was granted transitional release he would not be successful and that doing so "would be setting him up for failure."

The State also called Dr. Austin DesLauriers, supervising psychologist with the SPTP, to testify. Dr. DesLauriers testified that Clark was originally diagnosed with "[p]edophilia, sexually attracted to female (nonexclusive type) and antisocial personality disorder." Dr. DesLauriers authored Clark's most recent annual review, which was completed in 2016, and found that Clark still suffered from pedophilia and antisocial personality disorder. Dr. DesLauriers testified that he used two risk assessments to evaluate the safety of placing Clark on transitional release. Dr. DesLauriers testified that risk assessors were better predictors than clinical judgment to predict future behavior. On the Static-99 Revised test, Clark's 2016 score placed him within the high risk category, meaning that he was at a high risk of recidivism. On the Sex Offender Treatment Intervention and Progress Scale Clark's 2016 score placed him in the "'Low Needs'" category, which suggested Clark had "'Considerable Need for Improvement'" in the sexual interests area. His combined 2016 score placed Clark in a moderate to high risk category. Clark's 2015 scores placed him in the same category. Ultimately, Dr.

3

DesLauriers did not believe that Clark's mental abnormality or personality disorder had changed so that he could be safely placed in transitional release.

Dr. Stanley Mintz performed an independent evaluation of Clark to assess whether Clark was appropriate for transitional release. Dr. Mintz reviewed a 2001 clinical service report, a disciplinary total assessment, a 2002 court evaluation, and annual reports for 2013, 2014, and 2015 to prepare his evaluation. Dr. Mintz also skimmed the 2016 annual report before the hearing. Dr. Mintz testified that he believed Clark had a low potential to engage in further acts of sexual violence. Dr. Mintz also stated that Clark had been through several sex offender treatment programs and he had previously progressed through several of the phases of SPTP.

Dr. Mintz testified that he did not use any risk assessments in his evaluation. He stated that he did not believe strongly in risk assessments. Instead, Dr. Mintz relied on his 45 years of clinical experience. He utilized some generalized tests to determine that Clark had average to high intelligence, mild visual spatial cognitive impairment, and no major neurotic or psychotic patterns. Dr. Mintz also used the HARE Psychopathy Checklist to measure Clark's antisocial attitudes and functioning, including criminal acting out. Clark scored low on the checklist, which suggested there was not a significant and current general pattern of psychopathology. Dr. Mintz' report indicated that he did not view Clark as having an antisocial personality disorder. Dr. Mintz' report also stated that he did not view Clark as exhibiting symptoms of pedophilia at that time.

During Dr. Mintz' testimony, there was some confusion regarding what he was recommending for Clark. In his report Dr. Mintz ultimately recommended that Clark be placed on transitional release. However, Dr. Mintz testified that Clark should be in Phase Five at a minimum, and considered for Phase Six. Neither Phase included transitional release. When questioned by the State about this discrepancy, Dr. Mintz stated, "I presume phase 6 is what used to be transitional release. . . . I'm not recommending that he

4

jump any phases, but that perhaps go to one phase above where he was when he was at his highest phase of Larned State Hospital."

The district court found that probable cause did not exist to believe that Clark's mental abnormality or personality disorder had significantly changed so that he would be safe to be placed in transitional release. Clark timely appealed the district court's decision.

ANALYSIS

*Polygraph evidence*

As a preliminary matter, Clark argues that Applequist's testimony regarding the polygraphs should have been excluded as inadmissible. The parties bundle this into their main arguments but we will address it here separately.

Clark, relying on *In re Care & Treatment of Foster*, 280 Kan. 845, 862-63, 127 P.3d 277 (2006), contends that the polygraph results and opinions based on the results are inadmissible as evidence. The State argues primarily that Clark failed to object to Applequist's testimony below and did not explain why he should be able to raise the issue for the first time on appeal. The State urges this court to decline to hear the issue.

Alternatively, the State argues that *Foster* does not bar the admission of testimony regarding polygraphs because of a 2011 amendment to K.S.A. 59-29a06(c). This court has addressed K.S.A. 59-29a06(c) in a similar context, holding that "if the district court looks to [the] evidence as substantive rather than as a basis to evaluate the expert's opinion, it errs." *In re Norris*, No. 110,364, 2014 WL 6909650, at *4 (Kan. App. 2014) (unpublished opinion) (addressing in the context of inadmissible hearsay).

5

The State is correct in contending that Clark did not object to Applequist's testimony and did not argue why they should be able to raise the issue for the first time on appeal. Because of these critical omissions, we decline to address the issue. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011); Kansas Supreme Court Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 34.) In passing, however, we note that even if the polygraph evidence was inadmissible it would not change the outcome of this appeal.

*District court's ruling on probable cause*

Clark's primary contention on appeal is that the district court erred when it found no probable cause to believe that his condition had changed sufficiently to permit his safe transfer to transitional release.

When a petitioner committed to the SVP program demands a hearing on his or her annual review, he or she "bears the burden to establish probable cause at an annual review hearing." Thus, the district court must "consider the evidence in the light most favorable to the committed person and resolve all conflicting evidence in that person's favor." *In re Care & Treatment of Burch*, 296 Kan. 215, 225, 291 P.3d 78 (2012) (citing *In re Care & Treatment of Sipe*, 44 Kan. App. 2d 584, 592, 239 P.3d 871 [2010]). In making its ruling, the district court must determine whether there is sufficient evidence to cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief that the committed person's mental abnormality or personality disorder has so changed that the person is safe to be placed in transitional release. This court makes the determination de novo. *In re Care & Treatment of Sipe*, 44 Kan. App. 2d at 592-93.

The evidence presented at the hearing primarily focused on the annual reports, Dr. Mintz' evaluation, and testimony from Applequist, Dr. DesLauriers, and Dr. Mintz. Dr. Mintz was able to review previous annual reports, excluding the 2016 report, while making his evaluation. While Dr. Mintz' testimony may have reflected some confusion in

6

his understanding of SPTP treatment levels, when viewed in a light most favorable to Clark, Dr. Mintz' clear recommendation was that Clark was ready for transitional release.

The State relies on testimony from Applequist and Dr. DesLauriers to show that Clark is not ready for transitional release. Both testified that Clark was not ready for transitional release. The State also relies on the risk assessments that Dr. DesLauriers used to measure Clark's recidivism risk. However, Dr. Mintz addressed the issues of risk assessments in his testimony saying that he did not believe strongly in risk assessments. In his report, Dr. Mintz stated that Clark was a low risk to engage in repeated acts of sexual violence. Further, Dr. Mintz did not view Clark as a threat to the community at that time.

Part of the State's argument relies on discrediting Dr. Mintz' review of Clark's progress through programs that occurred before Clark entered the SPTP. The State argues that Clark's participation in programs before he entered the SPTP cannot be used because it is not evidence that his condition has "'so *changed* that [he] is safe to be placed on transitional release.'" The State's argument may have merit given the language of K.S.A. 2016 Supp. 59-29a08(c). But in the end we find the State's argument to be unpersuasive because Dr. Mintz reviewed annual reports that occurred after Clark entered the SPTP. When viewed in a light most favorable to Clark, Dr. Mintz' review of the annual reports could have been sufficient for Dr. Mintz' recommendation.

Our court addressed similar issues in *In re Care & Treatment of Sipe*. Sipe was a committed SVP who was seeking transitional release after one of his annual reviews. The court appointed an independent evaluator who indicated that Sipe had no significant psychological disorder and that he was at a medium risk of reoffending, ultimately recommending that he be transferred to transitional release. This court found that, when viewing the evidence in a light most favorable to Sipe, the independent evaluation stating that Sipe had no significant psychological disorder and placing him at a medium risk

7

level was enough to meet the probable cause standard. Accordingly, this court remanded the case to district court with instructions to conduct an evidentiary hearing. 44 Kan. App. 2d at 594.

When compared to *In re Care & Treatment of Sipe*, the evidence in this case suggesting that probable cause existed is stronger for Clark than it was for Sipe. Here, Dr. Mintz found that Clark was at a low risk to engage in further sexual violence and that he was not a danger to the community at that time. Further, Dr. Mintz found that Clark did not suffer from antisocial personality disorder or exhibit symptoms of pedophilia at that time. When viewing the record as a whole in a light most favorable to Clark, there was probable cause to believe his condition had so changed that he was safe to be placed in transitional release.

It is important to note here that a finding of probable cause does not entitle Clark to transitional release under the statute. Instead, the district court must conduct an evidentiary hearing on the issue of whether transitional release is appropriate. At the evidentiary hearing, the State must "prove beyond a reasonable doubt that the committed person's mental abnormality or personality disorder remains such that the person is not safe to be placed in transitional release and if transitionally released is likely to engage in repeat acts of sexual violence." K.S.A. 2016 Supp. 59-29a08(c).

In summary, we hold the district court erred in finding that there was not probable cause to believe Clark's mental abnormality or personality disorder had significantly changed so that he was safe to be placed in transitional release. When viewing the record as a whole and resolving conflicting evidence in Clark's favor, there is sufficient evidence to show that his abnormality or disorder had significantly changed.

Reversed and remanded with directions to conduct an evidentiary hearing pursuant to K.S.A. 2016 Supp. 59-29a08(c).

8