NOT DESIGNATED FOR PUBLICATION

No. 121,323

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care & Treatment of BOYD STANLEY HUNTINGTON III.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; ROBERT P. BURNS, judge. Opinion filed May 1, 2020.
Affirmed.

*Christopher Cuevas*, of Kansas City, for appellant.

*Kurtis Wiard*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., HILL and GARDNER, JJ.

PER CURIAM: This is an appeal by a sexually violent predator, Boyd Stanley Huntington III, of the district court's denial of his motion for an independent evaluation and the court's order denying him an evidentiary hearing. Huntington has not shown us an abuse of discretion by the court in denying his request for an independent evaluation. He also has not demonstrated anything in the record that would show probable cause for an evidentiary hearing to determine if he can be placed in a transitional release program. His continuing failure to participate in his treatment programs shows that Huntington has no right to relief. We affirm the district court.

1

*Case history*

After committing several sex crimes with his younger sister, the court ruled in January 2001 that Huntington is a sexually violent predator and ordered him to the Sexual Predator Treatment Program at Larned State Hospital. The definition of "sexually violent predator" is "any person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in repeat acts of sexual violence." K.S.A. 2018 Supp. 59-29a02(a). Huntington has been involuntarily committed at Larned since 2001.

The record shows that annual reports from the staff at Larned concluded that Huntington remains a sexually violent predator. See K.S.A. 2018 Supp. 59-29a08(a).

*2019 review hearing*

In February 2019, Huntington asked the court to order his transitional release based on his 2018 annual report and over the objection of the Secretary of Kansas Department for Aging and Disability Services. He also requested an evaluation by an independent expert.

At the annual review hearing on Huntington's petition, Huntington did not appear in person but was represented through counsel. Counsel told the district court that Huntington requested an independent evaluation because he denied certain findings in the report submitted by the State. Counsel argued that Huntington said, "the State is, essentially, lying, and giving false information in their report; and he believes that an independent evaluation would prove that and that he doesn't believe that he can prove his case until he gets that independent evaluation."

Counsel also claimed that Huntington's compliance with the program in the past had "failed to move him through the steps." Huntington believed the programs were "basically worthless, that the programs do not help with rehabilitation or any other effort." Huntington's counsel also said that Huntington felt the programs were "poorly done, poorly run, and poorly managed," and "if they had better programs, he thinks this whole process would be better for everyone" at the facility. Counsel argued that an independent evaluation was necessary because Huntington did not believe he "actually fits the criteria at this time."

The district court reviewed Huntington's 2018 annual report prepared by a licensed clinical psychotherapist and a psychologist. The report specified Huntington suffered from:

- Pedophilic disorder, sexually attracted to females, nonexclusive type;
- major depressive disorder, recurrent episode, moderate;
- attention-deficit/hyperactivity disorder; and
- antisocial personality disorder.

The report concluded that Huntington would likely engage in repeated acts of sexual violence and recommended that he not advance to transitional release.

Larned employees reported that from 2017 to 2018, Huntington was enrolled in two programs—Illness Management & Recovery and Moral Reasoning. He neither attended nor participated in either program. Huntington was also enrolled in Living with a Personality Disorder, which he attended and participated in at a rate of 16.67 percent. Huntington was also enrolled in a "Treatment Resistant x 5" group, which he attended and participated in at a rate of 18.18 percent in one of the groups. He neither attended nor participated in four of these groups. Huntington similarly did not comply with journaling and fantasy log requirements. In his one-on-one sessions, he would mainly complain about the program rather than working toward advancing through it. Employees further

3

noted that Huntington had a history of violating rules and exhibiting behaviors such as yelling at staff and being on the unit after bedtime. It was also noted that Huntington's sister remained "the focal point of virtually all of his sexual arousal, urges, fantasies and behavior."

Huntington remained at the program's lower tier, Tier One—Skill Acquisition. He had not progressed to Tier Two—Skill Demonstration. Those who showed compliance with their program and treatment requirements were eligible for the highest privilege level—the purple, or "royal," level. Huntington attained the green privilege level, which was the second highest level of privileges available to a resident in the program.

Huntington's 2018 results on the Static-99R test—which estimates the probability that an adult male sexual offender will reoffend against a child or nonconsenting adult—placed him in the "'Average Risk'" category. His 2018 results from the Sex Offender Treatment Intervention and Progress Scale—which assesses the risk, treatment, supervision needs, and progress among adult male offenders—placed him in the "'High'" risk category. His sexual interests, cooperation with treatment, and employment fell in the "'Very Considerable Need for Improvement'" category. Collectively, Huntington's 2018 Static-99R and SOTIPS results placed him in a "'Moderate-High'" risk/need category. The report noted that these risk assessment instruments may underestimate an offender's degree of recidivism.

Huntington reported during his evaluation interview that he was not working on treatment elements. "'I am not really doing treatment. I am still trying to work on myself, the way I look at things, the way I work on things.'" In response to a question about his progress in the program, Huntington responded, "'I talk about how the program screws me around . . . . As of right now, I am not doing anything. . . . I do go to a lot of activities compared to what I was doing last year.'" Huntington also reported that some rules of the

4

program were "'totally outrageous, arbitrary, and capricious. There is no real reason for it.'"

At the hearing, the State opposed Huntington's requests for an independent evaluation and transitional release. The State highlighted aspects of the report that showed Huntington did not comply with the expectations of his treatment and he was not participating in his treatment plan. The State noted that Huntington minimized his offense for which he was convicted, and he admitted he was not participating in his treatment. The State also noted there was a presumption that a person cannot show probable cause for placement in transitional release if that person is not participating in the program. The State then asked the district court to consider Huntington's lack of compliance with the institutional requirements, as well as his personal participation, and deny his requests.

The district court found that Huntington was not in compliance because he failed to do what was asked of him in both the program and his treatment so there was no need for an independent examination. The district court also denied Huntington's request for release, finding that he failed to establish probable cause to show that his mental abnormality or personality disorder had changed so it would be safe for him to be placed in transitional release.

*We see no abuse of discretion in denying an independent evaluation.*

Huntington claims the judge abused his discretion in denying his request for an independent evaluation. The State argues to the contrary. The State is right.

The procedure for annual review of the mental condition of a person committed to the Sexual Predator Treatment Program is set by statute. A person, "may retain, or if the person is indigent and so requests the court *may* appoint, an examiner . . . [who] shall have access to all available records concerning the person. . . . The appointment of an

examiner is discretionary." (Emphasis added.) K.S.A. 2018 Supp. 59-29a08(c). Thus, whether an independent examiner should be appointed at the annual review stage should be left to the discretion of the district court. *In re Care & Treatment of Twilleger*, 46 Kan. App. 2d 302, 310, 263 P.3d 199 (2011).

Before appointing an examiner, the district court is required by statute to consider factors such as the person's compliance with institutional requirements and the person's participation in treatment to determine whether the person's progress justifies the costs of an independent examination. K.S.A. 2018 Supp. 59-29a08(c).

A judicial action constitutes an abuse of discretion if it is:
- Arbitrary, fanciful, or unreasonable;
- based on an error of law; or
- based on an error of fact.

*Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018).

The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

Huntington does not claim that the district court failed to consider his compliance and participation. Nor does he argue the report reflected that he was complying and participating with his treatment. Instead, he argues there was also evidence in the report that showed his compliance and participation. Huntington suggests that because he attained a green badge and participated in one-on-one therapy sessions, static testing, and the resident interview for his annual examination report, the district court abused its discretion by ignoring this evidence.

6

We interpret this to be an argument that the district court acted unreasonably—one of the elements of an abuse of discretion. But we see no lack of reason by the court here.

The report specifies that only those in compliance with their treatment program are eligible for royal purple status, which Huntington did not have. He also had not been promoted to Tier Two. Additionally, although he attended some of his one-on-one sessions, the report makes clear that Huntington merely used the sessions to complain about the program rather than to make progress in his treatment. Finally, Huntington's compliance with static testing and his annual examination interview does not support a conclusion that he likewise complied with his treatment expectations throughout the year, prompting the evaluation.

He admitted he was not participating in his programs, his diagnoses remained unchanged, and his treatment plan for the upcoming year included the goal of focusing on his cooperation with treatment and addressing criminal and rule-breaking attitudes and behavior. The report's finding that Huntington's lack of compliance and participation supported its conclusion that he was unsafe for transitional release overwhelms the noted acknowledgments of some positive aspects of Huntington's residency.

Basically, Huntington claims that the district court should have weighed the details in the report differently. He asks us on appeal to reweigh the evidence. This we cannot do. An appellate court does not weigh conflicting evidence, pass on witness credibility, or redetermine questions of fact. *In re Care & Treatment of Williams*, 292 Kan. 96, 104, 253 P.3d 327 (2011).

With this record, there were ample reasons for the judge to deny Huntington's request for an independent evaluation. We find no abuse of discretion.

*Huntington has shown us no good reason for the court to hold an evidentiary hearing on his petition.*

Huntington contends that the district court erred when it failed to find probable cause that his condition changed to allow his placement into transitional release. He argues that because he contested statements in the State's evaluation report, a conflict within the evidence was created and the district court should have resolved this conflict in his favor.

The State contends that Huntington:

- Did not meet his burden to establish probable cause to justify placement in transitional release; and
- did not rebut the presumption that he could not demonstrate probable cause to justify this placement.

The State argues the evidence was uncontroverted and—even when viewed in a light favorable to Huntington—warrants affirming the district court's denial of his petition.

A quick review of procedures is helpful at this point. Appellate courts review de novo a district court's probable cause determination under K.S.A. 2018 Supp. 59-29a08(g). We view the evidence in the light most favorable to the committed individual. See *In re Care & Treatment of Burch*, 296 Kan. 215, 225, 291 P.3d 78 (2012).

According to K.S.A. 2018 Supp. 59-29a08(a), an individual committed as a sexually violent predator must have an annual examination of his or her mental condition. And an annual report must be sent to the court that committed the person under the Act. Based on this annual report, the committed individual may request an annual review hearing and petition for transitional release. K.S.A. 2018 Supp. 59-29a08(b). If the district court has denied a committed individual's petition for transitional release, "then

*the court shall deny the subsequent petition*, unless the petition contains facts upon which a court could find the condition of the petitioner had significantly changed so that a hearing was warranted." (Emphasis added.) K.S.A. 2018 Supp. 59-29a11(a). The annual review hearing is not an evidentiary hearing for transitional release. The committed individual is entitled to attorney representation at the hearing but may not be present. See K.S.A. 2018 Supp. 59-29a08(e) and (g); *In re Burch*, 296 Kan. at 220-21.

At the annual review hearing, it is the committed individual's burden to show probable cause. K.S.A. 2018 Supp. 59-29a08(d); see *In re Burch*, 296 Kan. at 225. If the committed person does not participate in the prescribed treatment plan, the person is presumed to be unable to show probable cause to believe he or she is safe to be released. K.S.A. 2018 Supp. 59-29a08(d). To establish probable cause, the committed individual must present facts "sufficient to cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief that [the committed individual's] mental abnormality or personality disorder had so changed that he was safe to be placed in transitional release." *In re Burch*, 296 Kan. at 226.

If the district court determines at the annual review hearing that probable cause exists to believe that the person's mental abnormality or personality disorder has significantly changed so that the person is safe to be placed in transitional release, then the court must set a hearing on the issue of whether to place the individual in transitional release. K.S.A. 2018 Supp. 59-29a08(g).

Since the district court had denied Huntington's prior petition in 2018, it was thus required to deny this 2019 petition unless it contained enough facts to support a conclusion that his condition has significantly changed. See K.S.A. 2018 Supp. 59-29a11(a). And because the evidence showed—and Huntington admitted—he was not participating in his treatment plan, there was a statutory presumption that he would be

9

unable to show probable cause to believe he was safe for placement in transitional release. See K.S.A. 2018 Supp. 59-29a08(d).

Huntington does not acknowledge or address his burden to present—or even claim to have presented—facts sufficient in his petition to establish probable cause to believe his condition changed so he was safe to be placed in transitional release. He further does not address or attempt to rebut the presumption. Instead, Huntington argues only that—because he proffered, through counsel, that statements in the evaluation report were false—the district court erred in failing to find probable cause because "this conflict with the evidence should have been resolved in [his] favor." See *In re Care & Treatment of Sipe*, 44 Kan. App. 2d 584, 592, 239 P.3d 871 (2010). In other words, he contends that simply because he says the report is false, he is entitled to a hearing.

The State persuasively argues, however, that Huntington's counsel's argument to the district court about his disagreement with the State's evidence was not, itself, evidence. The State specifies this is because "it is well recognized that statements and arguments of counsel are not evidence." See *Gannon v. State*, 298 Kan. 1107, 1126, 319 P.3d 1196 (2014). Thus, Huntington's attorney's claim that the State was lying in the evaluation report did not amount to a conflict in the evidence that the district court was then required to resolve in Huntington's favor.

Huntington has shown no contradictory evidence in the record that could be resolved in his favor, and he makes no other arguments under this issue. He has failed to meet his burden to show probable cause.

Affirmed.