NOT DESIGNATED FOR PUBLICATION

No. 123,020

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of
WILLIAM E. SELLS.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; CONSTANCE M. ALVEY, judge. Opinion filed April 2, 2021. Affirmed.

*Christopher Cuevas*, of Kansas City, for appellant.

*Jerry C. Edwards*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., MALONE, J., and MCANANY, S.J.

PER CURIAM: William E. Sells appeals the district court's denial of his request for an independent examiner and his petition for transitional release under the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. 2020 Supp. 59-29a01 et seq. Sells claims the district court abused its discretion by failing to appoint an independent examiner and the district court erred in finding there was no probable cause to believe that his mental abnormality or personality disorder had significantly changed to warrant an evidentiary hearing on whether it would be safe to place him in transitional release. After carefully reviewing the record and the arguments of the parties, we affirm the district court's judgment.

FACTS

Sells is 81 years old. In 1988, he received a diversion on one count of indecent liberties with a child, based on sexual conduct with his 13-year-old daughter. In 1993, Sells was convicted of two counts of aggravated criminal sodomy after admitting to having sexual contact with the 13-year-old daughter of a man he met while in sex offender treatment. In 1999, the State filed a petition alleging that Sells was a sexually violent predator under the KSVPA. The district court committed Sells to the sexual predator treatment program in 2000.

In accordance with the KSVPA, Sells received annual examination reports, each concluding that his mental condition or personality disorder had not significantly changed so that it would be safe to place him in transitional release. Over the years, Sells filed many petitions for release that were denied by the district court.

In March 2018, Sells advanced to tier two of the three-tier program. According to his 2018 annual report, Sells had difficulty on the tier two outings and either approached or failed to avoid minors. Sells was placed on probation because he failed to show appropriate awareness and avoidance actions and he had several instances of noncompliance with program rules. On October 23, 2019, Sells was reduced back to tier one because he failed to meet the expectations to remain on tier two. Sells appealed the tier reduction but the reduction was upheld.

Sells' most recent annual review, filed in March 2020, again concluded that his mental abnormality or personality disorder had not significantly changed so that it would be safe to place him in transitional release. The report confirmed that Sells remained on tier one, skills acquisition. As for disciplinary action, the report stated that in June 2019, Sells allegedly violated a program rule by possessing a glass bottle although this violation

was dismissed because Sells was not properly served. The report also noted that in May 2019, Sells "took a peer's sandwich."

On the positive side, Sells obtained the highest privilege level, the "purple" or "royal" privilege level, by complying with rules and registration requirements and paperwork, attending 100% of groups and classes, maintaining constant program advancement and hygiene requirements, and room cleanliness. Because of his privilege level, Sells was eligible for employment and worked as a laundry porter. Sells attended 13 open leisure sessions, and enrolled in tier two psycho-education courses, including assertive option and pre-outing courses. The report stated that Sells participated well but struggled with the pre-outings class.

As part of the annual examination, Sells completed actuarial risk assessment instruments. The Static-99R-2003, used to estimate the probability of reoffending, scored Sells at a "-1" which placed him in the "[b]elow [a]verage [r]isk" category. Sells also completed the ACUTE-2007, which measures "dynamic factors" and the offender's general recidivism risk. Sells received a score of "1" which reflected a moderate priority for recidivism and moderate priority for sex and violence risk. The report noted that his risk score was impacted by the rejection of supervision. He also completed the STABLE-2007, which assesses change in intermediate-term risk, assesses treatment needs, and helps predict recidivism in sexual offenders. He scored a 4 out of 26, placing him in the moderate treatment needs category due in part to his capacity for relationship stability, sexual deviant interest, and cooperation with supervision. When all three risk assessments were considered together, Sells scored in the "[m]oderate risk/need" category.

The report stated that Sells continued to suffer from pedophilic disorder, posttraumatic stress disorder, and other specified personality disorders with antisocial and paranoid traits. It concluded that Sells remained a sexually violent predator and his

3

mental abnormality or personality disorder had not significantly changed so that it would be safe to place him in transitional release.

Sells requested an annual review hearing and moved for the appointment of an independent examiner, and the district court held a hearing on the matter. Sells did not appear in person but was represented by counsel. Sells' counsel proffered Sells' "side of the story" in which Sells acknowledged having a problem understanding his surroundings but said it was because his hearing aids were broken, he has cataracts in his left eye, and he was almost 81 years old. Sells also commented on his side of the glass bottle incident, but the court noted that the report revealed that the glass bottle violation was ignored because nothing was administratively filed. After hearing his statement, the district court denied Sells' request for the appointment of an independent examiner, finding that because of his regression from tier two back to tier one, he had not shown sufficient progress in his treatment to justify the cost of an independent examiner.

As for transitional release, the district court acknowledged Sells' age and his hearing and eyesight problems but still found he failed to show probable cause that his mental abnormality or personality disorder had significantly changed so that it would be safe to place him in transitional release. In support of its finding, the district court pointed to Sells' tier reduction, his inability to avoid or identify risks, and his lack of ability to identify the issues that put him in this position. Sells timely appealed.

*Did the district court abuse its discretion by failing to appoint an independent examiner?*

On appeal, Sells first claims the district court abused its discretion by failing to appoint an independent examiner for his annual review. Under the KSVPA, the committed person may request that the district court appoint an independent examiner. K.S.A. 2020 Supp. 59-29a08(c). In deciding whether to appoint an examiner, the district court must "consider factors including the person's compliance with institutional

4

requirements and the person's participation in treatment to determine whether the person's progress justifies the costs of an examination." K.S.A. 2020 Supp. 59-29a08(c).

Sells argues that he complied with institutional requirements as evidenced by his purple privilege level. He also contends that he was participating in treatment as evidenced by his purple privilege level, the record of classes and groups he attended over the past year, his attendance of an individual therapist session quarterly, and his completion of all requested evaluations and assessments. The State acknowledges that Sells is participating in his treatment but argues that his progress does not warrant an independent examiner. The State argues that Sells violated institutional requirements as evidenced by his tier reduction.

The appointment of an independent examiner is discretionary. K.S.A. 2020 Supp. 59-29a08(c). Thus, this court reviews the district court's decision on whether to appoint an independent examiner for an abuse of discretion. *In re Care & Treatment of Twilleger*, 46 Kan. App. 2d 302, 310, 263 P.3d 199 (2011). Judicial discretion is abused if the judicial decision (1) is unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018). The party asserting an abuse of discretion bears the burden of showing abuse. 307 Kan. at 739.

The district court denied Sells' request for the appointment of an independent examiner, finding he had not shown sufficient progress in his treatment to justify the cost as a result of his tier reduction. The district court's decision was reasonable. While Sells is correct that he was participating in treatment and complying with the program requirements necessary to obtain the purple privilege level, the district court had to consider "whether [Sells'] progress justifie[d] the costs of an examination." K.S.A. 2020 Supp. 59-29a08(c). The district court stated that Sells' tier reduction, because of unsuccessfully completing his outings, showed he was regressing rather than progressing in the program. We conclude the district court did not abuse its discretion by failing to

5

appoint an independent examiner. See, e.g., *In re Care & Treatment of Merryfield*, No. 110,529, 2014 WL 2229141 (Kan. App. 2014) (unpublished opinion) (finding that the district court reasonably denied petitioner's request for an independent examination when he was only on phase three of the then seven phase treatment program).

*Did the district court err in finding there was no probable cause to believe that Sells' condition had changed?*

Next, Sells claims the district court erred when it found there was no probable cause to believe that his mental abnormality or personality disorder had significantly changed so that it would be safe to place him in transitional release. The State counters that the district court correctly denied Sells' petition for transitional release because of his regression in the program and his struggles while on tier two.

A person committed under the KSVPA must have an examination of his or her mental condition once every year. K.S.A. 2020 Supp. 59-29a08(a). A committed person may request an annual review hearing and petition for transitional release. K.S.A. 2020 Supp. 59-29a08(b). At the annual review hearing, the committed person has the burden "to show probable cause to believe the person's mental abnormality or personality disorder has significantly changed so that the person is safe to be placed in transitional release." K.S.A. 2020 Supp. 59-29a08(d). If the district court previously denied a petition for transitional release because the person's condition had not significantly changed, "then the court shall deny the subsequent petition, unless the petition contains facts upon which a court could find the condition of the petitioner had significantly changed so that a hearing was warranted." K.S.A. 2020 Supp. 59-29a11(a).

Appellate courts apply a de novo standard of review over the district court's decision at an annual review hearing on whether probable cause existed to believe that the person's mental abnormality or personality disorder had significantly changed so that

6

it would be safe to place the person in transitional release. *In re Care & Treatment of Burch*, 296 Kan. 215, 223, 291 P.3d 78 (2012). Because Sells bears the burden of proof, the court must consider the evidence in the light most favorable to him. 296 Kan. at 225.

Sells argues that the district court incorrectly focused on the tier reduction, when "the information that supported this tier reduction was insufficient, and at the very least contradicting." He argues the reduction was based in part on his alleged noncompliance with program rules but neither violation stemmed from sexual behavior, instead it was for the alleged possession of a glass bottle and for taking food. Sells argues that the evidence showed he did not do or think anything inappropriate. Sells also points to the results of the Static-99R which revealed he was at below average risk for reoffending. The State asserts that Sells' tier reduction was because of his struggles on the community outings and rule violations, which shows he is not ready for transitional release.

As a preliminary matter, Sells' assertion that he was reduced back to tier one only because of minor rules violations is not supported by the record. Sells had difficulty on tier two community outings and either approached or failed to avoid minors. He was placed on probation and ultimately removed from tier two. In any event, Sells administratively appealed the tier reduction and it was upheld, so whether there was sufficient evidence to support the tier reduction is not directly at issue in this appeal.

Sells points to his "below average risk" score on the Static-99 as supporting a finding of probable cause. In support of this assertion, he cites *In re Care & Treatment of Sipe*, 44 Kan. App. 2d 584, 239 P.3d 871 (2010) for the proposition that a person with a score of medium risk or below establishes probable cause. But *Sipe* is distinguishable and does not stand for the proposition Sells claims. Sipe's annual review report stated that he remained a sexually violent predator, but the district court appointed an examiner to also evaluate Sipe. The appointed examiner disagreed and found that Sipe showed no current

indications of psychological disorders and presented a medium risk of reoffending. The appointed examiner recommended transitional release.

The district court denied Sipe's petition finding he remained a sexually violent predator, but a panel of this court reversed the decision. 44 Kan. App. 2d at 594. The panel found that the district court should have taken the evidence in the light most favorable to Sipe and since there was evidence, from the independent examiner, that he no longer suffered from a mental abnormality or personality disorder, the district court should have found probable cause existed to hold an evidentiary hearing.

*Sipe* does not stand for the broad proposition that a person with a score of medium risk or below establishes probable cause for release. And unlike in *Sipe*, Sells' annual report revealed that he still suffered from multiple mental abnormalities or personality disorders including, pedophilic disorder, posttraumatic stress disorder, and other specified personality disorders with antisocial and paranoid traits. Although Sells had a "below average risk" score on the Static-99, he disregards the other actuarial results, that when taken together, placed him in the "[m]oderate risk/need" category.

Even taking the evidence in the light most favorable to Sells, he fails to show probable cause to believe his mental abnormality or personality disorder had significantly changed so that it would be safe to place him in transitional release. While Sells is on the highest privilege level and is making some progress in the program by taking classes, he is still only on tier one of the three-tier program. He also continues to suffer from pedophilic disorder, posttraumatic stress disorder, and other specified personality disorders with antisocial and paranoid traits. Based on the entire record, we conclude the district court did not err in denying Sells' request for transitional release.

Affirmed.