NOT DESIGNATED FOR PUBLICATION

No. 122,108

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of
JOHN F. CLEMENTS JR.

MEMORANDUM OPINION

Appeal from Butler District Court; JANETTE L. SATTERFIELD, judge. Opinion filed November 13, 2020. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Michael J. Duenes*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., STANDRIDGE, J., and MCANANY, S.J.

PER CURIAM: John F. Clements Jr. appeals the trial court's determination that he is a sexually violent predator subject to involuntary commitment under the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. 59-29a01 et seq. Clements also appeals the trial court's denial of his request to appoint an independent examiner for his annual review process. Because sufficient evidence supports both of the trial court's rulings, we affirm.

Clements pleaded no contest and was convicted of aggravated indecent solicitation of a child, in violation of K.S.A. 1985 Supp. 21-3511. On June 6, 1989, Clements was conditionally released to parole. On June 13, 1989, one week into his parole, Clements sexually battered a 17-year-old male. On November 5, 1989, Clements sodomized a 15-year-old male. In 1990, a jury found Clements guilty of one count of sexual battery and one count of aggravated criminal sodomy.

1

In 2017, the Kansas Department of Corrections (KDOC) notified the Attorney General of Clements' imminent release and that Clements may meet the criteria of a sexually violent predator. The State then petitioned the Butler County District Court to involuntarily commit Clements under the KSVPA.

The trial court held a three-day bench trial to determine whether Clements met the definition of a sexually violent predator and, therefore, involuntary commitment was appropriate. Dr. Bradford Sutherland, a psychologist from Lansing Correctional Facility, testified at trial. Dr. Sutherland completed a forensic evaluation report on Clements and determined that he met the legal criteria for a sexually violent predator. Dr. Sutherland diagnosed Clements with pedophilic disorder, hebephilic disorder, and an avoidant and compulsive personality disorder. Dr. Sutherland based these diagnoses primarily on Clements' criminal history and autobiography. Dr. Sutherland diagnosed Clements using the Diagnostic and Statistical Manual of Mental Disorders—5th edition (DSM-5), a standardized manual used in psychiatry and psychology. Dr. Sutherland criticized a report prepared by Clements' expert witness because the report said that Clements' pedophilia was in remission, but the DSM-5 does not provide criteria for diagnosing remission in pedophilic disorder.

Dr. Sutherland explained that Clements' personality disorder diagnosis affected his risk of repeating acts of sexual violence. According to Dr. Sutherland, Clements has the ability to understand behavior and "present as socially conforming on the face all the while having the capacity to engage in behaviors that fly under the radar," which would allow him to commit offenses without prosecution. Dr. Sutherland noted that "the number of victims Clements was convicted upon" was relatively small, compared to Clements' own self-report of a significant number of additional victims. This difference showed Dr. Sutherland that Clements could "avoid detection." Dr. Sutherland scored Clements a 6 on the Static-99R, an actuarial tool for assessing the risk of committing a new sexually

2

violent offense. This score placed Clements within the well-above-average level of risk as compared to other sex offenders. Thus, Dr. Sutherland concluded that Clements has serious difficulty controlling his dangerous behavior.

Dr. Mitchell Flesher evaluated Clements at Larned State Hospital and also determined that Clements met the legal criteria for a sexually violent predator. Dr. Flesher diagnosed Clements with pedophilic disorder. Dr. Flesher could not answer whether pedophilic disorder could go into remission because whether remission is at all possible is still debated in the scientific literature. Although the DSM-5 describes pedophilia as a lifelong illness, Dr. Flesher acknowledged that elements of the disorder may change over time. Actuarial tools used to evaluate the likelihood of repeating sexual offenses placed Clements high on the scale of risk. He had a 94.2 percentile ranking, which meant he was more likely to reoffend than 94 out of 100 sex offenders. In addition to these actuarial tools, Dr. Flesher determined that Clements had serious difficulty in controlling his dangerous behavior based on his crimes of conviction, some of which occurred within a short time of being supervised. Dr. Flesher said that Clements "demonstrated an ability to find victims in a variety of settings. And so that makes it more difficult to reduce access." Victim access is a factor which increases risk of recidivism. Clements' annual report showed that Clements admitted to having a history of paying or trading for sexual favors. Clements acknowledged that "most of my victims were that way. Everybody gets something out of it."

Clements testified on his own behalf about what he had learned in his second sex offender treatment program. Clements explained that he learned about his deviant habit cycle. He learned that a great deal of stress acts as a trigger which begins the cycle. Clements testified that his treatment program recommended keeping a journal. He stated that the purpose of journaling is two-fold: (1) "[y]ou can see where stressors are building up" and (2) "it's something that, along with accountability partners, you can use to help figure out appropriate ways of dealing with things. If you weren't real sure about how you

3

should've done it, you can check and get feedback." Clements diligently followed the advice to keep a regular journal. Clements also learned that he needed to stay away from minors by avoiding or leaving places with a high proportion of children when possible or staying around other adults when necessary. Clements stated that he had been using the intervention skills since 2003, that he had stopped masturbating to thoughts of past victims, that he had quit seeking out sexual partners, and that he had not engaged in any sexual behavior with another person since 2003.

In the treatment program, Clements participated in group sessions. Other group members told stories of how they were abused as children and the effects that it had on them. Clements realized for the first time that, even with his victims who consented, damage was done to them, their families, and friends. Clements said that he feels grief, sorrow, and shame when he thinks about past victims. He also discovered that if he was not having inappropriate relations against the rules, he did not have to worry about getting caught, which reduced the stress in his life and prevented the deviant cycle from starting.

But Clements also testified about his extensive sexual offenses, as detailed in his autobiography. Clements could not remember feeling remorse after he "went hog wild" in 1972 and 1973. Clements explained that in high school he was active in debate, forensics, and choir to be around people his own age because he did not like what he was doing with younger people. He testified that he tried to stop his behavior in high school through self-control, but it did not work. Further, Clements described previous unsuccessful sex offender treatment programs.

Clements' expert, clinical psychologist Dr. Gerald Gentry, testified on his behalf. Like Drs. Sutherland and Flesher, Gentry diagnosed Clements with pedophilic disorder, but he added obsessive-compulsive disorder. Gentry had not conducted any actuarial tests, although he reviewed the data supplied by Drs. Sutherland and Flesher. Dr. Gentry

4

agreed with their actuarial assessments, which placed Clements in a group almost four times more likely to reoffend than the average sex offender. But Dr. Gentry contended that Clements would be an outlier in that group because of his remorse and current state of mind. Although Dr. Gentry asserted that Clements' pedophilic disorder was in remission, he acknowledged that the DSM-5 provided no instruction or guidance for diagnosing remission in pedophilic disorders. By contrast, Dr. Gentry testified that for "all of the other paraphilic disorders in that section of the DSM there is guidance provided to the clinicians." The DSM-5 describes pedophilia as a lifelong condition, but elements of the disorder may change over time.

The trial court ruled that Clements was a sexually violent predator subject to involuntary commitment. Clements timely appealed. But before his appeal was docketed, Clements petitioned the trial court for release following his first annual review.

In May 2019, the trial court held a hearing to determine if probable cause existed to believe that Clements' mental abnormality or personality disorder had significantly changed so that he was safe to be placed in transitional release. The trial court denied both Clements' petition for release and his request for an independent examination.

Clements timely appeals.

*Does Sufficient Evidence Support the Trial Court's Determination That Clements is a Sexually Violent Predator?*

*Involuntary Commitment Proceedings*

When considering the sufficiency of evidence in a sexually violent predator proceeding, appellate courts must view the evidence in the light most favorable to the State. Further, appellate courts must be convinced that a reasonable fact-finder would

have found that the State met its burden to show beyond a reasonable doubt that the person is a sexually violent predator. *In re Care & Treatment of Cone*, 309 Kan. 321, 332-33, 435 P.3d 45 (2019).

The State must prove beyond a reasonable doubt four elements to establish that a person is a sexually violent predator. *In re Care & Treatment of Williams*, 292 Kan. 96, 253 P.3d 327 (2011). The four elements are as follows:

> "(1) the individual has been convicted of or charged with a sexually violent offense, (2) the individual suffers from a mental abnormality or personality disorder, (3) the individual is likely to commit repeat acts of sexual violence because of a mental abnormality or personality disorder, and (4) the individual has serious difficulty controlling his or her dangerous behavior." 292 Kan. at 105-06.

Clements argues that the State failed to show beyond a reasonable doubt that he continued to have difficulty controlling his dangerous behavior. Thus, only the fourth element is at issue here. See 292 Kan. at 107 (holding that issues not briefed are waived or abandoned on appeal). Clements argues that his abstinence since 2003 shows his capacity for self-control. He notes that the record contains no prison disciplinary report of a sexual nature. He contends that he has shown insight into his deviant habit cycle, the damage he had inflicted on his victims, how to manage stress, and how to use various interventions. Then, Clements argues that insufficient evidence supports the trial court's ruling that he continues to have serious difficulty controlling his dangerous behavior. Thus, Clements argues that the trial court erred in determining that he is a sexually violent predator subject to involuntary commitment.

Nevertheless, a reasonable fact-finder could find that the State proved beyond a reasonable doubt that Clements has serious difficulty controlling his dangerous behavior. The State's experts testified at length to that effect, and Clements' expert witness did not sufficiently rebut that testimony. In fact, all three doctors agreed on the diagnosis of

6

pedophilic disorder and on Clements' placement in the well-above-average risk category. The only difference of opinion was Dr. Gentry's unsupported claim that Clements was an outlier in this category because his pedophilia was in remission.

The trial court explicitly weighed the testimony of the three doctors in its written ruling. The court noted Dr. Gentry's difference of opinion, stating the following:

> "The distinction, however; in his report, was that Mr. Clements was in remission. Although Dr. Gentry admitted that a remission designation on Pedophilic Disorder is not listed in the current DSM V, his assessment remained the same. Dr. Gentry did not use any actuarial instruments and does not believe that in and of themselves that they are valid predictors. However, he could not say that they are not accepted in the field and developed for the purpose of measuring potential recidivism.
> "Dr. Gentry believes that Mr. Clements age: 59 currently; is a predominant factor that should be controlling. He believes that advance age is as likely to similarly diminish the frequency of sexual behavior involving children as it does other paraphilically motived and normophilic behavior. Admittedly, the Static-99R similarly takes age into account but Mr. Clements still scored in the above average range. The Static-99R has been scientifically studied, validated and peer-reviewed."

In summing up, the trial court also stated:  "This court is not willing to accept that Mr. Clements no longer poses a threat to minor children because of his advancing age." The court then adopted the testimony of Dr. Flesher, determining that Clements is a sexually violent predator based on his convictions, history of offending and deviance, his personality characteristics, and "last but not least his level of risk at large."

On appeal, this court's standard of review asks whether, after viewing all the evidence in the light most favorable to the State, we are convinced a reasonable fact-finder could have found that the State met its burden to prove beyond a reasonable doubt that Clements is a sexually violent predator. See *In re Care & Treatment of Colt*, 289 Kan. 234, 243-44, 211 P.3d 797 (2009). This court does not reweigh the evidence,

7

determine the credibility of witnesses, or resolve conflicts in the evidence. See *Williams*, 292 Kan. at 104. Viewing the evidence in the light most favorable to the State, we conclude that the State met its burden to show beyond a reasonable doubt that Clements had serious difficulty controlling his dangerous behavior, consistent with the definition of a sexually violent predator. And thus, Clements' argument that he is not a sexually violent predator fails.

*Annual Review*

When a petitioner committed to the sexually violent predator program demands a hearing on his annual review, he or she "bears the burden to establish probable cause at an annual review hearing." Thus, the trial court must "consider the evidence in the light most favorable to the committed person and resolve all conflicting evidence in that person's favor." *In re Care & Treatment of Burch*, 296 Kan. 215, 225, 291 P.3d 78 (2012) (citing *In re Care & Treatment of Sipe*, 44 Kan. App. 2d 584, 592, 239 P.3d 871 [2010]). Upon such a demand, the trial court must "determine whether there is sufficient evidence to cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief that the committed person's mental abnormality or personality disorder has so changed that the person is safe to be placed in transitional release." *Sipe*, 44 Kan. App. 2d at 592-93.

At Clements' annual review, the trial court determined that Clements had failed to show probable cause to believe that his mental abnormality or personality disorder has significantly changed so that he is safe to be placed in transitional release. Although Clements filed a notice of appeal from that decision, his brief contains no argument that the trial court erred in making its probable cause determination. A failure to adequately brief an issue results in abandonment or waiver. *In re Care & Treatment of Ramage*, 53 Kan. App. 2d 209, 214, 387 P.3d 853 (2016). Thus, Clements' argument fails.

8

*Did the Trial Court Abuse Its Discretion in Denying Clements' Request for an Independent Examiner?*

On appeal, Clements argues that the trial court abused its discretion by denying his request to appoint an independent examiner. In particular, he asserts that the trial court made an error in law by not following our Supreme Court's precedent in *Burch*. Clements argues as follows: (1) that the court did not properly consider that probable cause might be established through an independent examination by a qualified professional and (2) that such consideration is required under *Burch*. Clements contends that he cannot hope to establish the requisite probable cause without a report from an independent examiner.

Under K.S.A. 2018 Supp. 59-29a08, a person involuntarily committed as a sexually violent predator has the right to an annual review process. After receiving an annual written notice, the committed person may petition the trial court for release from the program. The court must then conduct an annual review hearing. *Griffin v. Bruffett*, 53 Kan. App. 2d 589, 594-95, 389 P.3d 992 (2017). At the hearing, the committed person has the burden to show probable cause to believe that his or her mental abnormality or personality disorder has significantly changed so that he or she is safe to be placed in transitional release. K.S.A. 2018 Supp. 59-29a08(c) authorizes the trial court to appoint an examiner before the annual review hearing, stating the following:

> "The person may retain, or if the person is indigent and so requests the court may appoint, an examiner . . . and the examiner shall have access to all available records concerning the person. If the person is indigent and makes a request for an examiner, the court shall determine whether the services are necessary and shall determine the reasonable compensation for such services. The court, before appointing an examiner, shall consider factors including the person's compliance with institutional requirements and the person's participation in treatment to determine whether the person's progress justifies the costs of an examination. The appointment of an examiner is discretionary."

9

Because the appointment is discretionary, this court reviews a trial court's decision not to appoint an independent expert under an abuse of discretion standard. See *In re Care & Treatment of Twilleger*, 46 Kan. App. 2d 302, 310, 263 P.3d 199 (2011). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018).

Here, Clements points to no factual error made by the trial court. Rather, Clements argues that the court made an error of law.

Clements contends that the trial court failed to follow precedent set out in *Burch* when it considered his request for an independent examination. Clements does not point out the relevance of *Burch* to his case. This is important because *Burch* contains an important factual difference. For example, Timothy Burch requested an independent expert and the court appointed an expert. The issue in *Burch* was whether Burch's evidence, including the expert's report, showed probable cause that his mental abnormality had changed to the extent that he was safe to be placed in transitional release. *Burch*, 296 Kan. at 217-18. Here, the court denied Clements' request for an independent expert, an issue not addressed in *Burch*. Thus, Clements fails to show how the *Burch* decision applies to his case or how the failure to follow this precedent would be an error of law.

Then, the remaining issue is whether the court's decision is arbitrary, fanciful, or unreasonable, that is, no reasonable person would have taken the view adopted by the trial court. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011). To make its determination, the court reviewed reports which contained elements both supporting and undermining Clements' request. The court here balanced the information and made its decision.

10

In terms of privileges, Clements had progressed to and maintained the Purple Royal Privilege Level, the highest level of privileges available to a resident. To earn this status, residents must attend 100% of groups/classes and maintain constant program advancement, among other good behavior requirements. But only a year into the program, Clements could not progress beyond Tier One of the Sexual Predator Treatment Program in that limited time. Although Clements' Static-99 score decreased from 6 to 4, this score of 4 still placed him in the "Above Average Risk" category. Clements' score on SOTIPS, a statistically derived dynamic measure assessing risk, placed him in the low risk category, with no areas in the "Very Considerable Need for Improvement" category. But his sexual interests landed in the "Considerable Need for Improvement" range, while emotion management scored in the "Some Need for Improvement" category. For that reason, his diagnosis remained pedophilic disorder.

The trial court also considered a factor required by K.S.A. 2018 Supp. 59-29a08(c), that is, whether Clements' progress justifies the cost of an independent examiner. The court described the cost of the previous independent expert, stating: "So you had Larned, you had Dr. Flesher, and then I gave you a third doctor, Dr. Gentry at the tune of 12 or 13,000 who did another independent exam." The court noted that the benefit of the previous exam may not have justified the cost, stating it would not appoint Dr. Gentry again because the quality of his testimony was not "influential with the court." Then the court stated that there are very few experts in the field, noting that it did not have the credentials of Dr. Nystrom—the independent examiner that Clements had requested. In denying Clements' request, the court stated the following:

> "I do want to note that I do believe he's making progress and that he's participating. And, again, I do think it's important to have a ruling on the initial findings. And this court's not suggesting that if he makes as much progress next year and petitions the court that the court wouldn't at that time allow him to be independently evaluated and at its discretion by Dr. Nystrom at that time. I just don't believe that it's been long enough

11

that he's sufficiently progressed through the program like everyone has to or that there is cause to believe that his diagnosis has changed."

We conclude that given the evidence presented, the trial court's ruling was not an abuse of discretion. Reasonable persons could agree with the trial court's conclusion that Clements' treatment had not progressed sufficiently to justify appointment of an independent examiner.

For the preceding reasons, we affirm the trial court.

Affirmed.