(276 P.3d 232)
No. 105,344

In the Matter of the Care and Treatment of JIMMY WAYNE MILES.

Opinion filed April 27, 2012.

*Christopher R. Cuevas*, of Cuevas Law Firm, P.A., of Kansas City, for appellant.

*Jennifer L. Myers*, special assistant attorney general, *Jerome A. Gorman*, district attorney, *Kristafer R. Ailslieger*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., BUSER and STANDRIDGE, JJ.

STANDRIDGE, J.: Jimmy Wayne Miles was civilly committed to the custody of the Secretary of the Kansas Department of Social and Rehabilitation Services (SRS) in December 2001. Since that time, he has been a resident in the Sexual Predator Treatment Program (SPTP) at Larned State Security Hospital. In this appeal, Miles challenges the district court's decision to deny his petition for discharge or transitional release from confinement. Because we find Miles presented sufficient evidence to establish probable cause to believe he is qualified for discharge or transitional relief, we remand to the district court for a hearing pursuant to K.S.A. 2011 Supp. 59-29a08(c)(1).

## FACTS

In 1989, Miles pled guilty to charges of aggravated sexual battery against his 9-year-old daughter. The court imposed an underlying term of prison but granted probation, during which Miles sought treatment from a mental health center. In 1996, a jury convicted Miles of aggravated indecent liberties in connection with his 6-year-old great-niece. The court sentenced Miles to a term of prison.

In January 2000, the Kansas Department of Corrections (KDOC) had Miles evaluated to consider release options and civil commitment under the Sexually Violent Predator Act (SVPA), K.S.A. 59-29a01 *et seq.* Miles ultimately was paroled in May 2001 with conditions that required him to attend a sex offender treatment program. The court, however, revoked his parole the next month upon a finding that Miles violated the conditions thereof by failing to take sufficient responsibility for either of his two convictions, failing to adequately progress in treatment, and failing to adequately journal.

Upon his return to prison, the KDOC ordered Miles be evaluated a second time to consider release options and civil commitment under the SVPA. In a report dated August 27, 2001, the evaluator indicated that Miles met the criteria for "Pedophilia, Sexually Attracted to Females, Nonexclusive Type" and "Personality Disorder, NOS." The results of the Static-99 test (an actuarial test used to determine the chances of a person committing a new sexual offense once he or she is released from prison) administered to Miles at the time, however, reflected he had a "low" risk of reoffending as "many of the usual risk factors were absent in his case."

On October 3, 2001, the State filed a petition alleging Miles may meet the criteria of a sexually violent predator and, as such, requested Miles be transferred to an appropriate facility for an evaluation of his mental condition. The court appointed counsel for Miles and granted the request for an evaluation, which was conducted at Larned State Hospital. On November 12, 2001, the evaluating clinicians at Larned presented a report and opinion that Miles met the definition of a sexually violent predator as defined

by the SVPA. In December 2001, Miles waived his right to a jury trial and stipulated to the fact that there was sufficient evidence from which a jury could find that he met the statutory criteria of a sexually violent predator. As a result of this stipulation, the court involuntarily committed Miles to SRS custody pursuant to K.S.A. 2011 Supp. 59-29a07(a) until such time that his mental abnormality improved to a point where it would be safe to release him.

As required by K.S.A. 2011 Supp. 59-29a08(a), SRS thereafter conducted an annual evaluation of Miles' mental condition and submitted annual reports regarding his status. These reports were completed by SRS psychologists having regular contact with Miles, as well as Miles' primary therapist. Each of the eight reports submitted by SRS from 2002 through 2009 expressed the opinion that Miles remained a sexually violent predator and recommended that Miles remain in SRS custody.

In May 2006, Miles requested and received an independent examination from Dr. Robert Barnett on the issue of whether Miles' mental abnormality had so changed that he was not likely to commit acts of sexual violence if released from the SPTP. Barnett's report stated, in relevant part:

"[F]rom my perspective as a forensic psychologist who is not involved in his treatment, Mr. Miles appears to be doing relatively well and also appears to be complying with all the requirements of the program. A review of the records also suggests that substance abuse played a major role in his illegal behavior in the past, and that provided he abstains from drugs or alcohol in the future, and participates in outpatient substance abuse treatment, he probably represents little or no risk to the public. Due to this, and the fact that the test findings in this evaluation are relatively benign, I can see no objection to him moving forward in this program with the eventual goal of being released back into the community."

On June 25, 2007, almost a year after Dr. Barnett conducted his evaluation, the court held a hearing and concluded that, although Miles was making progress in his treatment, the evidence presented did not amount to probable cause to believe that his mental abnormality had so changed that it was safe to place him in transitional release.

In January 2008, Miles filed a pro se petition for discharge or transitional release and requested the district court appoint an

expert to examine him and provide testimony in support of his petition. On January 31, 2008, the court summarily denied Miles' petition and his request to have an expert appointed. On appeal, a panel of this court reversed and remanded to the district court with directions to make a finding, as required by K.S.A. 59-29a06, regarding whether an independent evaluation was "necessary" under the circumstances. See *In re Care & Treatment of Miles*, 42 Kan. App. 2d 471, 479-80, 213 P.3d 1077 (2009).

Following remand, the district court ultimately granted the request for an independent assessment and, on March 16, 2010, appointed Dr. Stanley Mintz to evaluate Miles. Mintz met with Miles on May 12, 2010, and prepared a psychological evaluation report. Mintz stated in his report that he believed Miles had made "tremendous progress" during his time at Larned and that Miles "does not appear to be a violent sexual predator at this time." Mintz recommended that Miles be considered for advancement to transitional release with a goal of eventual release from the program.

On August 30, 2010, the district court held a hearing on Miles' petition for discharge or transitional release. After taking the matter under advisement, the court held the evidence presented did not amount to probable cause to believe that Miles' mental abnormality had so changed that it was safe to place him in transitional release.

## ANALYSIS

On appeal, Miles argues the evidence he presented to the court was sufficient to establish probable cause to believe that his mental abnormality had so changed that it was safe to place him in transitional release. To be clear, the relief Miles seeks as a result of his probable cause showing is not immediate transitional release, but a full evidentiary hearing or trial on the issue of whether transitional release is appropriate. In order to put Miles' request in context, we find it helpful to provide a brief overview of the SVPA civil commitment proceedings relevant to the issue presented.

*Relevant Provisions of the SVPA*

Each person committed pursuant to the SVPA is entitled to an annual review. K.S.A. 2011 Supp. 59-29a08. As part of that annual review, the confined person is entitled to be examined by an expert in order to render an opinion regarding whether the person should continue to be confined. If, upon review, the district court "determines that probable cause exists to believe that the person's mental abnormality or personality disorder has so changed that the person is safe to be placed in transitional release, then the court shall set a hearing on the issue." K.S.A. 2011 Supp. 59-29a08(c)(1). It is the person committed who bears the burden to establish probable cause for this evidentiary hearing. *In re Care & Treatment of Sipe*, 44 Kan. App. 2d 584, 592, 239 P.3d 871 (2010).

If the court makes a probable cause determination and sets a second hearing, the burden shifts and it is the State that must prove, *beyond a reasonable doubt*, "that the committed person's mental abnormality or personality disorder remains such that the person is not safe to be placed in transitional release and if transitionally released is likely to engage in acts of sexual violence." K.S.A. 2011 Supp. 59-29a08(c)(3). The State may elect to proceed with this evidentiary hearing before the court or before a jury, and the person committed is afforded the same rights to which he or she was entitled during the initial commitment proceeding. K.S.A. 2011 Supp. 59-29a08(c)(3).

*Standard of Review*

As noted above, it is the person committed who bears the burden of proof to establish probable cause for a second hearing on the issue. *In re Care & Treatment of Sipe*, 44 Kan. App. 2d at 592. Because the standard of proof is probable cause, the district court must "determine whether there is sufficient evidence to cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief that the committed person's mental abnormality or personality disorder has so changed that the person is safe to be placed in transitional release." 44 Kan. App. 2d at 592-93. A probable cause determination under the SVPA is comparable to the probable cause determination made at the preliminary hear-

ing stage of a criminal proceeding; thus, it is appropriate to apply the same de novo standard of review under the SVPA that we apply in the criminal context. 44 Kan. App. 2d at 590-91. This standard of review is particularly appropriate when, as here, the district court's probable cause determination was based on expert reports and arguments of counsel, placing this court in the same position as the district court to determine whether the evidence is sufficient to establish probable cause. See 44 Kan. App. 2d at 591.

*The Evidence*

The evidence presented at the hearing consisted of (1) the journal entry of judgment for Miles' 1996 conviction; (2) precommitment reports from SRS-licensed psychologists diagnosing Miles with pedophilia (females) and a personality disorder (not otherwise specified); (3) a precommitment KDOC multidisciplinary team assessment finding Miles to be a high predatory risk; (4) eight postcommitment yearly reports completed by SRS psychologists and therapists having regular contact with Miles at Larned; and (5) two postcommitment psychological evaluations completed by two different independent licensed psychologists unaffiliated with SRS. Given the fact-intensive nature of our probable cause inquiry, we provide the following chronological summary of the information and opinions set forth in the yearly reports and the independent psychological evaluations.

December 19, 2002, Annual Report: Advanced to Level 2 of inpatient treatment program; good and satisfactory progress; had overcome early resistance to placement in program; sexual fantasies reportedly limited to adult women, typically movie stars.

December 17, 2003, Annual Report: Remained at Level 2 but almost ready to advance to Level 3; completed and presented his autobiography; made noteworthy progress in program, especially given the chronic low back pain he suffered; no sexual urges.

December 17, 2004, Annual Report: Advanced to Phase 3 but reticent to comply with treatment expectations (*e.g.*, declined to participate in annual interview and update).

<u>December 17, 2005, Annual Report</u>: Remains at Phase 3 with progress; attended classes and groups; continued to improve honesty with peers and staff; became more assertive and less negative; developed good abstract thinking skills in social situations and understanding of the treatment process; made remarkable strides in taking responsibility for sexual crimes; sought to advance to Phase 4 but did not meet requirements due to insufficient attendance statistics and underdeveloped relapse prevention plan.

<u>June 10, 2006, Evaluation by Dr. Robert Barnett</u>

**Procedures**: Performed mental status examination; conducted clinical interview; administered psychological tests; reviewed treatment records, including relapse prevention plan.

**Diagnostic impression**: Alcohol and cannabis dependence, in partial remission due to institutional placement; dysthymic disorder, late onset, mild.

**Findings**:
- No diagnosis of pedophilia.
- No discrepancies noted between information from Miles during interview and treatment records submitted in conjunction with the evaluation.
- Appeared to be doing relatively well and complying with all program requirements.
- Relapse prevention plan developed in Phase 4 was viable; showed thoughtfulness and utilization of concepts learned in treatment.
- Noted that SRS annual reports did not identify or discuss in any way the nature of Miles' mental abnormality.
- Miles' refusal to admit he molested his niece created an "existential dilemma" for Miles. He cannot move forward in the program unless he admitted to the conduct underlying his conviction, but if, in fact, he did not engage in the conduct, the only way Miles could move forward was to lie, which was behavior that also would prevent him from moving forward.

**Recommendation**: Given the benign results of psychological tests administered to Miles and the fact that substance abuse played a major role in his past illegal behavior, Miles probably represented little or no risk to the public provided he abstained from drugs and alcohol and participated in outpatient substance abuse treatment. "I can see no objection to him moving forward in this program with the eventual goal of being released back into the community."

December 18, 2006, Annual Report: Advanced to Phase 4 in February; successfully completed sexual behavior polygraph and relapse prevention plan; successfully completed many advanced core classes; difficulty, at times, seeing past behavior as problematic; no sexual urges, which may be due to a medication or physiological problem. "It is possible that during the next year, Mr. Miles will meet with the Transition Panel and be assigned to Phase 5."

December 18, 2007, Annual Report: Remained in Phase 4 but making progress; passed Advanced Strategies for Motivation class (98%); enrolled in other advanced classes (although attendance below average); completed relapse plan; took MSI II and polygraph; increased group participation; showed respect for peers; expressed himself in genuine manner; employed in vocational training program and got along well with coworkers, clients, and staff; reported no sexual function. Although needed to better maintain medication time lines, positive attitude, and personal hygiene, "Mr. Miles is to be commended for his continued progress in treatment. He appears to have a degree of clarity about what he needs to do to continue progress."

December 30, 2008, Annual Report: Raised clinical needs assessment scores to 8, which was required for advancement to Phase 5; submitted request to advance to Phase 5, which transition panel denied based—at least in part—on Miles' decision earlier in the day to throw a container of milk at the trash can due to the limited selection of food available in the cafeteria. Remained in Phase 4 with modest progress; continued to wrestle with negative attitude toward program but had worked very hard on these issues over the last 6 months; had made much fewer negative comments; and had

made efforts to be more open to feedback. Miles did not make entries in his sexual fantasy log and reported he rarely had sexual thoughts.

December 10, 2009, Annual Report: Minimal progress; medication compliant; polite and cooperative with staff; requested to see transition board which was denied due to lack of required attendance at activity therapy sessions; concerned about current medication regimen and issues related to anger; Miles did not make entries in his sexual fantasy log (reporting he rarely had sexual thoughts) and declined to take another polygraph until he had been approved to see the transition board; clinical needs assessment scores rounded up to 8 but program prohibited advancement unless the score was achieved without such rounding; took food from cafeteria in violation of program rules; for the most part better at bringing up topics and providing feedback to other group members but resisted negative feedback about him from others, particularly about his work in the program and his diet; declined to participate in annual interview due to pending litigation.

May 12, 2010, Evaluation by Dr. Stanley Mintz

**Procedures**: Performed mental status examination; conducted clinical interview; administered psychological tests; reviewed treatment records.

**Diagnostic impression**: Dysthymia, mild; generalized anxiety disorder; alcohol and cannabis abuse, in remission.

**Findings**:
- Miles was not currently a pedophile.
- Miles was not currently a violent sexual predator.
- Miles did not currently pose a threat to others.
- Miles had successfully internalized pro-social attitudes, values, and behavior patterns since his commitment.
- Miles stated in his clinical interview that he had participated and cooperated with all aspects of his treatment program; had passed polygraph examinations; had completed all sexual offender treatment program material; had completed substance abuse treatment; had good attendance in his classes; got along well with

staff and other residents; appreciated the harm he had done to his victims; and expressed remorse and guilt for his past conduct.

**Recommendation**: Miles should be considered for advancement to the transitional release phase of the program at this time with goal of eventual release from program. Miles could benefit from treatment for help in avoiding a substance abuse relapse and over-coming issues related to depression and anxiety.

*Discussion*

The sole issue presented in this appeal is whether the evidence presented to the district court, as summarized above, was sufficient to cause a person of ordinary prudence and action to conscien-tiously entertain a reasonable belief that Miles' mental abnormality or personality disorder has so changed that he is safe to be placed in transitional release. See K.S.A. 2011 Supp. 59-29a08(c). In order to determine whether Miles' mental condition has changed, we begin our discussion by looking back to the assessment of Miles' mental condition at the time he originally was committed.

The evaluation and report submitted to the court by SRS just prior to his commitment concluded that Miles met the diagnostic criteria for (1) pedophilia, sexually attracted to females, nonexclu-sive type and (2) personality disorder not otherwise specified with antisocial and narcissistic traits. Beyond this summary diagnosis, the report does not provide any criteria for, or information about, Miles' personality disorder. The report does, however, discuss the pedophilia diagnosis and cites to the Diagnostic and Statistical Manual of Mental Disorders, p. 528 (4th ed. 1995) (DSM-IV), which contains the following criteria for that diagnosis:

A. Over a period of at least 6 months, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children (generally age 13 years or younger);

B. The fantasies, sexual urges, or behaviors cause clinically sig-nificant distress or impairment in social, occupational, or other important areas of functioning;

C. The person is at least age 16 years and at least 5 years older than the child or children in Criterion A.

The precommitment evaluators found the behaviors underlying each of Miles' two convictions involved sexual activity with a pre-pubescent child over a period of at least 6 months and that those behaviors significantly impaired Miles' ability to adequately function; accordingly, the report concluded Miles met the diagnostic criteria for pedophilia.

The precommitment report further concluded that Miles met the statutory definition of a sexually violent predator. A sexually violent predator is defined by the SVPA as "[1] any person who has been convicted of or charged with a sexually violent offense and [2] who suffers from a mental abnormality or personality disorder which makes the person likely to engage in repeat acts of sexual violence." K.S.A. 2011 Supp. 59-29a02(a). Although the term "personality disorder" is not defined in the SVPA, the term "mental abnormality" is defined as "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others." K.S.A. 2011 Supp. 59-29a02(b). With regard to the first prong of the statutory definition, the evaluators considered Miles' past convictions. With regard to the second prong, it appears from the report that the evaluators considered Miles' diagnosis of pedophilia in conjunction with the repetitive nature of past improper sexual behavior in order to support their conclusion that Miles had a condition affecting his emotional or volitional capacity to the extent that it predisposed him to commit sexually violent offenses to such a degree that it posed a menace to the health and safety of others.

Having ascertained the precise nature of Miles' mental abnormality at the time he originally was committed, we are now ready to determine whether the evidence presented to the court supported a finding of probable cause to believe that Miles' mental abnormality had so changed that he was not likely to commit acts of sexual violence if released from the SPTP. In order to meet his burden to show that it had changed, Miles submitted reports from two separate psychologists who, after conducting comprehensive evaluations and reviewing relevant mental health records, both determined that Miles no longer met the diagnostic criteria for pe-

dophilia as set forth in the DSM-IV. Notably, this pedophilia diagnosis was an essential part of the original finding that Miles had a mental abnormality predisposing him to commit sexually violent offenses; thus, the fact that two different experts independently determined that Miles no longer met the diagnostic criteria for pedophilia was sufficient to create probable cause to believe that Miles' mental abnormality had changed to the extent that he was not likely to commit acts of sexual violence if released from the SPTP. This is especially true given there is no evidence in the record to contradict these two consistent expert opinions. Although a detailed examination of each annual report submitted from 2002 to 2009 may reflect isolated instances when Miles failed to satisfy the criteria necessary to advance to the next level/phase of the program, none of the reports identify the nature of Miles' mental abnormality or discuss the extent to which it has or has not changed.

In sum, we find the evidence presented at the hearing was sufficient to cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief that Miles' mental abnormality has so changed that he is safe to be placed in transitional release. Notably, our probable cause determination does not entitle Miles to transitional release; instead, it merely requires the district court to conduct an evidentiary hearing on the issue of whether transitional release is appropriate. At that hearing, the State again has the burden "to prove beyond a reasonable doubt that the committed person's mental abnormality or personality disorder remains such that the person is not safe to be placed in transitional release and if transitionally released is likely to engage in acts of sexual violence." K.S.A. 2011 Supp. 59-29a08(c)(3).

Reversed and remanded with directions.