NOT DESIGNATED FOR PUBLICATION

No. 126,785

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of
ROBERT W. DAVIS JR.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ROBB RUMSEY, judge. Submitted without oral argument. Opinion filed February 21, 2025. Affirmed.

*Charles Joseph Osborn*, of Osborn Law Office, LLC, of Leavenworth, for appellant.

*Dwight R. Carswell*, deputy solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., BRUNS and PICKERING, JJ.

PER CURIAM: In 2019, Robert W. Davis Jr. was involuntarily civilly committed under the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. 59-29a01 et seq. He has petitioned for transitional release every year since, each time being denied. This appeal concerns Davis' 2023 annual review. The district court found Davis did not demonstrate probable cause that his mental abnormality or personality disorder had significantly changed to warrant placement in transitional release. After review of the record, we find no error in the district court's decision and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In December 2018, a jury found Davis to be a sexually violent predator. The district court committed Davis to the custody of the Secretary of the Department of Aging and Disability Services (KDADS) under the KSVPA. Davis appealed his commitment,

1

and a panel of this court affirmed his commitment. *In re Care and Treatment of Davis* (*Davis I*), No. 121,947, 2020 WL 5581734, at *1 (Kan. App. 2020) (unpublished opinion).

As part of Davis' commitment under the KSVPA, he received annual psychological evaluations. After his annual examination in March 2020, Davis requested to be placed in transitional release. The district court denied Davis' request. Davis received another annual evaluation in March 2021 and again sought transitional release. When the district court again denied his request, Davis appealed. Another panel of this court considered both annual evaluations in *In re Care and Treatment of Davis* (*Davis II*), No. 125,179, 2022 WL 17073221, at *1-2 (Kan. App. 2022) (unpublished opinion). The panel concluded Davis failed to meet his burden to establish probable cause of a significant change in his mental abnormality or personality disorder warranting an evidentiary hearing. 2022 WL 17073221, at *3.

Following his 2022 annual evaluation, Davis again sought transitional release. The district court denied his request, and Davis appealed. Another panel of this court concluded Davis failed to establish probable cause that he should be placed in transitional release. *In re Care and Treatment of Davis* (*Davis III*), No. 126,085, 2024 WL 208246, at *1-2 (Kan. App. 2024) (unpublished opinion).

The annual evaluation report for 2023 recorded Davis' progress in the Sexual Predator Treatment Program (SPTP) between March 2022 and February 2023 and is the subject of the current appeal. There are three inpatient tiers in the SPTP and two outpatient/community treatment levels, one of which is transitional release. Davis remains in Tier One, the lowest tier. The goal of Tier One is to acquire skills necessary to safely function in open society environments and to address the issues contributing to placement in the SPTP. Davis' treatment plan included the following diagnoses: "Bipolar II Disorder, Hypomanic, In Partial Remission, Severe; Opioid Use Disorder, in a

Controlled Environment, Moderate; and Other Specified Personality Disorder with Paranoid and Narcissistic Features."

Davis was assigned to the "High-Risk Process Group." His primary therapist reported that Davis attended 100 percent of the group offerings, engaging appropriately. The therapist also reported that Davis attended 100 percent of his individual therapy sessions. However, the therapist noted that Davis was "caught with contraband and media" on June 24, 2022, and on January 19, 2022, Davis was observed screaming at a peer and then telling him, "[G]o kill yourself." In another incident of concern, Davis did not report to work in the vocational training program for four days due to a "'meltdown'" related to his bipolar disorder.

The psychoeducation counselor reported Davis failed a relationship skills course, attending only four of eight sessions, with four unexcused absences. The counselor noted that Davis passed two other courses.

Several actuarial tests were administered to Davis as part of the annual evaluation. The Static-99R—"an actual instrument used to estimate the probability that a convicted adult male sex offender will reoffend against a child or nonconsenting adult"—placed Davis in the "'Above Average Risk'" category. The estimated risk of Davis reoffending, compared to an average sex offender, was 1.94, meaning about twice as high. The STABLE-2007—"an actuarial instrument developed to assess change in intermediate-term risk status, assess treatment needs, and help predict recidivism in sexual offenders"—placed Davis in the "Moderate Treatment Needs" category. Taken together, the two tests placed Davis in an above average risk profile.

The ACUTE-2007—"a risk assessment instrument that measures dynamic factors that may change very rapidly, such as over a period of weeks or days"—revealed Davis appeared to have progressed in the last year. But the report also noted Davis' "risk would

be expected to significantly increase to a moderate or high level" should he exit the secure facility or discontinue psychotropic medication.

During the personal interview portion of the annual evaluation, Davis acknowledged that "realistically" the plan for the upcoming year would be Tier Two. The evaluator noted that Davis had shown improvement "[o]ver the past six to eight months." The report concluded that Davis remains a sexually violent predator who "suffers from a mental abnormality or personality disorder which makes it likely he will engage in repeated acts of sexual violence" and the risk associated therewith "has not so significantly changed that it would be safe for [him] to be placed in Transitional Release, as it is likely he may engage in repeat acts of sexual violence if placement was to occur at this time."

A supplement to the annual evaluation report covered the time period between February 16, 2023, and June 8, 2023. Items of concern included a rights restriction issued on March 14, 2023, based on Davis' "possession of numerous materials (predominantly religious in nature) that contained images of minors," and a letter Davis sent to a peer stating: "'I miss your smile and your touch.'" The peer turned it over to a therapist and stated Davis "used to flirt with him" but "he was not interested" and the letter made him uncomfortable. On May 9, 2023, the SPTP clinical program director noted the treatment team met to discuss Davis and "unanimously denied his advancement to Tier 2."

On June 13, 2023, the supplement to the annual evaluation report was amended to include clarification that the contraband previously referenced included not only images of minors, but also "documents containing other residents' names, [rational self-analyses or] RSAs attributed to another resident, several maps, padded envelopes, and large Ziplock bags." The chief forensic psychologist concluded "the risk associated with [Davis'] mental abnormality/personality disorder has not so significantly changed that it

4

would be safe for [him] to be placed in Transitional Release, as it is likely he may engage in repeat acts of sexual violence if placement was to occur at this time."

Following his 2023 annual evaluation, Davis again sought transitional release. The district court held a nonevidentiary probable cause hearing on June 16, 2023. Davis was not present at the hearing, but his counsel argued in favor of transitional release. The State pointed out several significant events, arguing against transitional release, including possession of contraband, screaming at another resident, failing to report to his vocational training job for four days, and failing the relationship skills course. The State also informed the district court about the inappropriate letter Davis sent to a peer, stating it raised concerns about Davis' "emotional regulation, insight, and personal accountability" because he sent the letter through the U.S. mail instead of the inpatient portal in an attempt to circumvent the regular process.

The State reiterated the recommendations the treatment team gave to Davis to advance to Tier Two, including "decreased anger, improved control, demonstrate longer period of psychiatric stability . . . , improving social skills, . . . to develop management skills to reduce impulsive behaviors and decrease rumination of negative emotions and increase his frustration-tolerance coping skills."

After entertaining arguments from counsel about Davis' progress, the district court concluded Davis' "mental abnormality or personality disorder has not so significantly changed that it would be safe for Mr. Davis to be placed in transitional release at this time."

Davis appealed.

ANALYSIS

Davis brings his appeal before us to determine whether the district court erred in concluding probable cause did not exist to show his mental abnormality or personality disorder had significantly changed that it would be safe for him to be placed in transitional release.

*Standard of Review*

Appellate courts apply a de novo standard of review when a person committed under the KSVPA appeals a district court's probable cause determination after an annual review hearing. *In re Care & Treatment of Burch*, 296 Kan. 215, 223, 291 P.3d 78 (2012). When making this determination, appellate courts, like the district court, "'must consider the evidence in the light most favorable to the committed person and resolve all conflicting evidence in that person's favor.'" 296 Kan. at 225.

*Discussion*

Davis claims on appeal he presented sufficient evidence to show probable cause his mental abnormality or personality disorder significantly changed to warrant placement in transitional release because of "his markedly decreased actuarial risk, medication compliance, participation in and completion of courses, participation in both group and individual therapy, and his regular attendance and successful completion of multiple classes."

The State correctly points out Davis has not progressed beyond Tier One—the first of three tiers—in the SPTP. The State argues it would be fundamentally unsafe to advance a committed person into transitional release and bypass Tiers Two and Three altogether.

Under the KSVPA, a committed person has the right to an examination of his or her mental condition once every year. K.S.A. 2023 Supp. 59-29a08(a). After receiving an annual report from the Secretary, the committed person may request an annual review hearing and petition for transitional release. K.S.A. 2023 Supp. 59-29a08(b). "'Transitional release'" is defined in the KSVPA as "any halfway house, work release, sexually violent predator treatment facility or other placement designed to assist the person's adjustment and reintegration into the community." K.S.A. 2023 Supp. 59-29a02(i). So even though the committed person remains in KDADS custody, the person placed in transitional release would have more independence and autonomy. *In re Care & Treatment of Twilleger*, 46 Kan. App. 2d 302, 308, 263 P.3d 199 (2011).

At the review hearing, the committed person must "show probable cause to believe the person's mental abnormality or personality disorder has significantly changed so that the person is safe to be placed in transitional release." K.S.A. 2023 Supp. 59-29a08(d). The district court appoints counsel and holds a nonevidentiary hearing to determine whether "probable cause exists to believe that the person's mental abnormality or personality disorder has significantly changed so that the person is safe to be placed in transitional release." K.S.A. 2023 Supp. 59-29a08(e) and (g). If the court finds probable cause, the court schedules an evidentiary hearing where the State has the burden to establish that transitional release remains inappropriate. K.S.A. 2023 Supp. 59-29a08(g); *In re Care & Treatment of Burch*, 296 Kan. at 221.

Probable cause is "'sufficient evidence to cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief that the committed person's mental abnormality or personality disorder has so changed that the person is safe to be placed in transitional release.'" *In re Care & Treatment of Miles*, 47 Kan. App. 2d 429, 434, 276 P.3d 232 (2012).

7

*Davis fails to meet his burden.*

Here, Davis has failed to meet his burden to show probable cause to believe his mental abnormality or personality disorder had significantly changed so that he is safe to be placed in transitional release. Aside from the fact Davis has yet to reach the second of three tiers in the SPTP, the evidence shows he still suffers from "Bipolar II Disorder Hypomanic, In Partial Remission, Severe; Opioid Use Disorder, In a Controlled Environment, Moderate; and Other Specified Personality Disorder with Paranoid and Narcissistic Features." The most recent Static-99R assessment placed Davis in an "Above Average Risk" category, noting the estimated chance Davis will reoffend is approximately twice that of the average sex offender. The most recent STABLE-2007 assessment placed Davis in the "Moderate Treatment Needs" category. The combination of these tests placed Davis in the above average risk profile. See *In re Care & Treatment of Cone*, 309 Kan. 321, 332, 435 P.3d 45 (2019) (finding actuarial tests used to assess potential for recidivism in sex offenders admissible in commitment hearing).

Davis' actions as outlined in the annual evaluation report and supplements also weigh against placing him in transitional release. He had a meltdown related to his bipolar disorder; he was given a right restriction for possessing contraband; he failed the relationship skills course; and he sent an unsettling letter to a peer in the program.

Applying the de novo standard of review and considering the facts in a light most favorable to Davis, we conclude Davis failed to establish the requisite probable cause entitling him to a full evidentiary hearing on his petition for transitional release under K.S.A. 2023 Supp. 59-29a08(d). See *In re Care & Treatment of Burch*, 296 Kan. at 225.

Affirmed.