NOT DESIGNATED FOR PUBLICATION

No. 128,169

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of
DUSTIN J. MERRYFIELD.

MEMORANDUM OPINION

Appeal from McPherson District Court; MICHAEL LLAMAS, judge. Submitted without oral argument. Opinion filed August 8, 2025. Affirmed.

*Charles C. Lindberg*, of Allen & Associates Law, LLC, of Minneapolis, for appellant.

*Andrew J. Lohmann*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., ATCHESON and ISHERWOOD, JJ.

PER CURIAM: Dustin J. Merryfield appeals the McPherson County District Court's denial of his challenge to an annual review recommending he remain a sexually violent predator involuntarily confined for treatment on the grounds of Larned State Hospital. Merryfield contends the 2023 report from clinicians for the treatment program established probable cause that he was suitable for placement in the transitional phase of the program preparatory to conditional release and the district court, therefore, should have ordered a full evidentiary hearing on his placement. We find no error and affirm the district court.

The district court appointed a lawyer to represent Merryfield but declined to authorize an independent clinical examination of him. The district court held an

1

evidentiary probable cause hearing at which five staff members from the treatment program testified, including the master's level psychologist who prepared the annual report and the program's chief forensic psychologist who reviewed and approved the report. Merryfield did not offer any affirmative evidence during the hearing.

The evidence showed that Merryfield has been an inmate in the program for about 23 years, essentially his entire adult life. The hearing record established that Merryfield remained in the first phase of the three-phase treatment protocol leading to transitional release—the step immediately preceding conditional release and then, ultimately, discharge from the program.

By statute, persons held for treatment under the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. 2024 Supp. 59-29a01 et seq., are to be clinically evaluated each year and a report of their status is to be forwarded to the district court that ordered their commitment. K.S.A. 2024 Supp. 59-29a08(a). The inmates may petition the district court for review hearings to consider whether they should be placed in the transitional release phase of the treatment program. K.S.A. 2024 Supp. 59-29a08(b). The hearing process unfolds in two sequential steps. The district court initially determines if the petitioner, here Merryfield, has shown probable cause to believe the mental abnormality triggering their confinement has sufficiently changed to warrant placement in transitional release. K.S.A. 2024 Supp. 59-29a08(d). If the petitioner makes that showing, the district court must hold an evidentiary hearing at which the State bears the burden of proving beyond a reasonable doubt that the petitioner is unfit for transitional placement. K.S.A. 2024 Supp. 59-29a08(g).

Merryfield bore the burden of establishing probable cause to believe his condition had substantially improved. But the district court was obligated to resolve any disputes in the evidence in his favor and to give him the benefit of all reasonable inferences drawn from the record. *In re Care & Treatment of Burch*, 296 Kan. 215, Syl. ¶ 8, 291 P.3d 78

2

(2012). We apply the same standard and review the district court's determination without any particular deference. 296 Kan. 215, Syl. ¶ 9. We have outlined this analytical approach in *In re Care & Treatment of Sipe*, 44 Kan. App. 2d 584, 592-93, 239 P.3d 871 (2010), and again in *In re Care & Treatment of Miles*, 47 Kan. App. 2d 429, 434-35, 276 P.3d 232 (2012) (adopting standard set out in *Sipe* and noting match with criminal law test for probable cause).

The evidence showed that Merryfield had not progressed in his treatment regimen during 2023 and displayed continuing antisocial behaviors including verbal threats directed at staff when they declined to accede to his requests. He continued to fall asleep during classes on a regular basis, and he continued to receive photographs considered to be inappropriately sexual. The reporting psychologist concluded Merryfield's condition had not materially changed, so he remained a sexually violent predator. She determined he would not be a suitable candidate for placement in the transitional phase of the program—effectively skipping two phases of the inpatient treatment program. Several actuarial tests for recidivism among sex offenders placed Merryfield at an average or moderate likelihood of reoffending if released. See *In re Care & Treatment of Cone*, 309 Kan. 321, Syl., 435 P.3d 45 (2019) (recognizing validity of two actuarial tests predicting recidivism among sex offenders, including one administered to Merryfield).

The district court filed a relatively short journal entry with generally phrased legal conclusions finding that Merryfield failed to establish probable cause his condition had sufficiently improved to warrant a full hearing on his placement in the transitional phase. Merryfield has appealed.

On appeal, Merryfield first argues he had both statutory and constitutional rights to the appointment of an independent psychologist for the preliminary hearing under K.S.A. 2024 Supp. 59-29a08(c). The statute allows an inmate to hire an independent examiner and gives the district court discretion to appoint an examiner for an indigent inmate. The

3

district court is to consider the inmate's "compliance with institutional requirements" and their participation in the treatment program, among other factors, in determining if their circumstances justify the expense of an independent examiner. K.S.A. 2024 Supp. 59-29a08(c). We review the district court's decision for abuse of judicial discretion. *In re Care & Treatment of Twilleger*, 46 Kan. App. 2d 302, 310, 263 P.3d 199 (2011). A district court exceeds that discretion if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Jennings v. Shauck*, 318 Kan. 711, 714, 547 P.3d 524 (2024); *State v. Shields*, 315 Kan. 131, 142, 504 P.3d 1061 (2022). On this point, Merryfield bears the burden on appeal as the party asserting abuse of discretion. *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

The district court did not make findings or conclusions specific to denying Merryfield's request for an independent examiner. But the district court's ultimate conclusions do double-duty in that respect. They are consistent with the annual report and the hearing evidence that Merryfield's psychological condition had not materially improved, that he was not compliant with some institutional rules, and that he displayed a lackadaisical attitude toward at least some of the treatment protocols. Merryfield offered no evidence rebutting those representations, and they sufficiently support a decision against appointing an independent examiner. We find no abuse of the district court's broad discretion on this issue.

Merryfield tries to deflect this result by citing K.S.A. 2024 Supp. 59-29a06(c). The statute provides that parties shall be permitted to call expert witnesses in any proceeding conducted under the KSVPA. So Merryfield would have been allowed to present otherwise qualified expert witnesses if he had retained them. But the statute does not require a district court to appoint an expert witness for an indigent inmate. Merryfield does not explore the legal ramifications, if any, of that dichotomy.

4

For his constitutional claim, Merryfield argues that in the absence of his own expert, the State's evidence could not have been subject to adversarial testing in the district court—something he characterizes as a constitutional right. Assuming that defines a constitutional right, Merryfield had a lawyer to cross-examine the State's witnesses in the preliminary hearing and to thus deploy a powerful tool for adversarial testing. See *State v. Franco*, 49 Kan. App. 2d 924, 936, 319 P.3d 551 (2014) ("And '[t]he judicial process treats an appearance on the witness stand, with the taking of an oath and the rigor of cross-examination, as perhaps the most discerning crucible for separating honesty and accuracy from mendacity and misstatement.'") (quoting *State v. Bellinger*, 47 Kan. App. 2d 776, 787, 278 P.3d 975 [2012] [Atcheson, J., dissenting]). As we have said, Merryfield could have presented evidence calling into question factual representations the State's experts relied on in forming their opinions. But he did not.

Merryfield next argues the hearing evidence established probable cause that his condition had sufficiently changed to warrant a full hearing. In explaining why the argument fails, we point to what we have set out already. The annual report and the expert testimony undermine his argument, and the factual representations depicted valid reasons Merryfield had not progressed through the required custodial phases of the rehabilitation scheme, rendering him an improbable candidate for the transitional phase. Those circumstances sufficiently supported the district court's ultimate conclusion.

For the first time on appeal, the State contends we may rely on K.S.A. 2024 Supp. 59-29a11(a) to affirm the district court. We typically do not consider arguments initially made to us rather than in the district court. *State v. Spilman*, 63 Kan. App. 2d 550, 574-75, 534 P.3d 583 (2023); *Gilliam v. Kansas State Fair Bd.*, 62 Kan. App. 2d 236, 249, 511 P.3d 969 (2022). The State says the statute creates a form of claim or issue preclusion applicable here because Merryfield had unsuccessfully challenged annual reports from earlier years. Because the State has otherwise prevailed, we decline to assess how K.S.A. 2024 Supp. 59-29a11(a) might apply here.

Affirmed.