NOT DESIGNATED FOR PUBLICATION

No. 129,338

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of
DAVID G. DELIMONT.

MEMORANDUM OPINION

Appeal from Morris District Court; COURTNEY D. BOEHM, judge. Submitted without oral argument. Opinion filed March 13, 2026. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Ryan J. Ott*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before BOLTON FLEMING, P.J., ISHERWOOD and COBLE, JJ.

PER CURIAM: In 2015, David G. Delimont was found to be a sexually violent predator under the Kansas Sexually Violent Predator Act (KSVPA) and was committed to the custody of the Kansas Department for Aging and Disability Services to undergo treatment in the Sexual Predator Treatment Program. Under the KSVPA, Delimont is entitled to an annual examination and review. As part of his 2025 review, Delimont petitioned for transitional release, which the district court denied. The district court also denied Delimont's request for the appointment of an independent examiner.

On appeal, Delimont argues that under K.S.A. 59-29a08(d), probable cause existed that his mental abnormality or personality disorder significantly changed so that it would have been safe to place him in transitional release. He also argues the district court

1

abused its discretion in failing to order an independent examiner under K.S.A. 59-29a08(c).

After a thorough review of the record, we conclude that the district court did not err in its finding under K.S.A. 59-29a08(d) that Delimont failed to show probable cause that he has experienced significant changes in his mental abnormality or personality disorder that would justify transitional release. While Delimont's annual examination report indicates some improvement, Delimont's diagnoses have not changed, he remains on the first tier of the Sexual Predator Treatment Program, and he fails to address the underlying reasons for his sexual offenses. Further, the district court did not abuse its discretion by denying Delimont an independent examination due to Delimont's lack of progress. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 1987, David G. Delimont was court-martialed by the United States Army and imprisoned for five years in a federal military prison after admitting to sexually assaulting his eight-year-old son on several separate occasions. Around a month after his release from prison, Delimont reoffended and pled guilty in 1995 to four sexually violent offenses committed against underage boys, including his nephew and step-nephew (ages 6 and 14) and two neighbors (ages 6 and 14). Delimont began serving a 273-month prison sentence for these crimes.

Shortly before his release in 2014, the State successfully petitioned to have Delimont committed as a sexually violent predator under the Kansas Sexually Violent Predator Act (KSVPA). Following a bench trial on stipulated facts in 2015, the district court found Delimont to be a sexually violent predator and committed him to the custody of the Kansas Department for Aging and Disability Services (KDADS) to undergo treatment in the Sexual Predator Treatment Program (SPTP). Delimont appealed, but a

2

panel of this court affirmed the district court's decision. *In re Care & Treatment of Delimont*, No. 114,495, 2016 WL 3366001 (Kan. App. 2016) (unpublished opinion).

Delimont received his first annual review as a participant in the SPTP in 2016. That report concluded that Delimont should remain in the program and transitional release was not appropriate. Since that time, Delimont has received annual review hearings to determine if he should remain classified as a sexually violent predator subject to treatment in the SPTP. Delimont unsuccessfully petitioned for an independent evaluation or transitional release in 2016, 2017, 2018, 2023, and 2024. Delimont appealed each denial, and a panel of this court affirmed in each case, except for the appeal of the 2017 denial which was dismissed. See *In re Care & Treatment of Delimont*, No. 117,706, 2017 WL 5951523, at *2 (Kan. App. 2017) (unpublished opinion) (affirming denial of 2016 petition based on unpreserved constitutional claims); *In re Care & Treatment of Delimont*, No. 120,242, 2019 WL 2237375, at *1 (Kan. App. 2019) (unpublished opinion) (finding no abuse of discretion in denial of independent examination requested in 2018 petition); *In re Care & Treatment of Delimont*, No. 126,768, 2024 WL 3634305, at *2, 4 (Kan. App. 2024) (unpublished opinion) (request to appoint an examiner waived and abandoned because Delimont did not brief the issue); *In re Care & Treatment of Delimont*, No. 127,976, 2025 WL 1088944, at *4-6 (Kan. App. 2025) (unpublished opinion) (Delimont's mental abnormality had not changed sufficiently to warrant transitional release).

KDADS completed Delimont's most recent annual review in 2025, cataloging Delimont's progress from March 2024 to February 2025. The annual examination indicated that Delimont continues to be diagnosed with Pedophilic Disorder, Sexually Attracted to Males, Nonexclusive Type and Borderline Personality Disorder. These diagnoses have been consistent throughout Delimont's commitment.

3

The examiner also noted that while Delimont has shown improvement through treatment, he remains on Tier 1 of the SPTP as a result of his failure to complete his assigned treatment plan. To advance to Tier 2, Delimont would need to complete several requirements: appropriately complete polygraph exams, successfully complete therapy assignments, create and receive approval for his Relapse Prevention Plan, and consistently follow all rules.

While Delimont has completed the first section of his Relapse Prevention Plan, he has not completed the remaining sections of his plan. The report indicated that Delimont's progress in therapy has been hampered by his lack of transparency regarding his sexual thoughts and behaviors, citing reports from other residents and staff. The report also noted that Delimont was overly focused on chronological events in his life rather than emotional issues or the specific details of his offenses. The report also stated that Delimont's participation in group therapy and various classes was average.

The report also took issue with Delimont's behavior. Delimont received a notice of deficient behavior on October 16, 2024, for being verbally aggressive and cursing at staff. He committed other rule violations such as going to another resident's door on multiple occasions, taking food to another unit, walking away from staff when being addressed, and yelling at staff.

KDADS also performed several tests as part of the annual review, and those results were contained in the examination report. One of the tests included the Static-99R assessment, which is used to estimate the probability that a convicted adult male sex offender will reoffend against a child or non-consenting adult. Delimont's score was "+1," which placed him in Risk Level III or "Average." In his previous annual review, his score fell within the same category.

On the STABLE-2007 test, which assesses any change in intermediate term risk status, assesses treatment needs, and helps predict recidivism, Delimont scored an 8 out of a possible 26 points, placing him in the "moderate" level of criminogenic needs at the 61.3 percentile. This score did not change from the prior year.

On the ACUTE-2007 test, which assesses recent risk-relevant behavior for sexual offenders in community settings, Delimont scored "within the expected range for adult males at assessment in the instrument's standardization sample in the Static-99R/STABLE-2007 Standardized Risk Profile of 'Average'." Combining the results on these tests placed Delimont in the "Level III" or "Average" risk profile, meaning he is "expected to have roughly the same rate of recidivism compared to the average individual convicted of a sexually motivated offense." This is the same score he received the prior year.

Delimont also completed a MoCA-BLIND test, which is a rapid screening instrument to detect mild cognitive dysfunction. A score of 19 or above is considered within a normal range. Delimont scored 18 out of 22 possible points. This score indicated Delimont may have cognitive functioning impairments. His score from the prior year was 16.

Finally, the examination report took issue with Delimont's failure to accept responsibility for his actions. Delimont did not believe his sexual offenses affected others and was specifically unaware of whether his victims were affected. He also blamed the district court for his situation.

The examination report concluded that Delimont was still a sexually violent predator and his mental abnormality or personality disorder had not significantly changed so as to ensure that he was safe to be placed in transitional release. The report included goals for Delimont to focus on for the future, including his Relapse Prevention Plan,

5

cognitive restructuring, emotional regulation, interpersonal relationships, rule adherence, transparency, social support, and healthy relationships.

After receiving notice his annual review had been completed, Delimont petitioned the district court for appointment of an independent examiner and for a probable cause determination that his mental abnormality or personality disorder had significantly changed to the extent that he was safe to be placed in transitional release. The district court held a non-evidentiary hearing, where it denied both requests. The district court found that although Delimont had improved, there was no probable cause to suggest transitional release would be appropriate. It also found that Delimont's minimal progress did not justify an independent examination.

Delimont timely appeals.

ANALYSIS

DID THE DISTRICT COURT ERR IN FINDING PROBABLE CAUSE DID NOT EXIST TO WARRANT TRANSITIONAL RELEASE?

Delimont alleges that the district court erred in finding he did not demonstrate probable cause that his mental abnormality or personality disorder significantly changed so that it would be safe to be placed in transitional release pursuant to K.S.A. 59-29a08(d).

*Standard of Review*

We review the district court's probable cause determination under K.S.A. 59-29a08(d) de novo. *In re Care & Treatment of Burch*, 296 Kan. 215, 223, 291 P.3d 78 (2012). Delimont bears the burden of proof to show probable cause that his mental abnormality or personality disorder significantly changed so that it would be safe for him

6

to be placed in transitional release. K.S.A. 59-29a08(d). In making this determination, we are required to consider the evidence in the light most favorable to Delimont and resolve all conflicting evidence in his favor. 296 Kan. at 225. To meet his burden, Delimont must show facts "sufficient to cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief that [his or her] mental abnormality or personality disorder had so changed that he [or she] was safe to be placed in transitional release." 296 Kan. at 226.

*Discussion*

We begin by reviewing the required annual review procedure under the KSVPA. First, "[e]ach person committed under the Kansas sexually violent predator act shall have a current examination of the person's mental condition made once every year." K.S.A. 59-29a08(a). A committed person may then request an annual review hearing and petition for transitional release. K.S.A. 59-29a08(b). At the annual review hearing, the committed person has the burden "to show probable cause to believe the person's mental abnormality or personality disorder has significantly changed so that the person is safe to be placed in transitional release." K.S.A. 59-29a08(d). "If the court at the annual review hearing determines that probable cause exists to believe that the person's mental abnormality or personality disorder has significantly changed so that the person is safe to be placed in transitional release, then the court shall set a hearing for transitional release on the issue." K.S.A. 59-29a08(g).

We note that if a district court previously denied a petition for transitional release because the person's condition had not significantly changed, "then the court shall deny the subsequent petition, unless the petition contains facts upon which a court could find the condition of the petitioner had significantly changed so that a hearing was warranted." K.S.A. 59-29a11(a).

7

In this case, Delimont received his annual review and petitioned the district court for transitional release. The district court denied Delimont's petition at a non-evidentiary hearing. We now consider the evidence in the record in a light most favorable to Delimont to determine whether he carried his burden of proof to demonstrate probable cause that his "mental abnormality or personality disorder has significantly changed so that the person is safe to be placed in transitional release." K.S.A. 59-29a08(d). If Delimont is successful, he will be entitled to a full hearing on his request for transitional release. K.S.A. 59-29a08(g).

In support of his claim, Delimont highlights his consistent participation and engagement in groups, classes, and individual therapy sessions. He asserts that he had no unexcused absences, demonstrated attentiveness, and appropriately participated in discussions. Delimont further notes that his Static-99R score of +1 places him in the "average risk" category, and that his risk is lower than 60% of sex offenders. He also points out that he received a decreased score on the STABLE-2007 evaluation. Lastly, he emphasizes that he has had considerable improvement in the management of his emotions and insight regarding his past behavioral issues.

While we acknowledge Delimont's efforts, we note that Delimont has remained in Tier One of the SPTP due to his inability to meet several requirements, such as completing a polygraph test without significant reactions, consistently completing all assigned therapy assignments, completing his Relapse Prevention Plan, and maintaining consistent adherence to all rules. The report notes that the SPTP consists of three inpatient tiers and two levels of supervised outpatient/community treatment (Transitional Release and Conditional Release). According to Delimont's examination report, the main focus in Tier One is the acquisition of skills necessary to allow for Delimont to "safely function in more challenging, open society environments, as well as encouraging him to address the individual issues which contributed to his placement at SPTP." Despite

8

receiving treatment under the SPTP for approximately 10 years, Delimont remains on Tier One.

Second, and importantly, Delimont continues to be diagnosed with pedophilic disorder and borderline personality disorder with antisocial features. Based on his continuous risk association, the report notes that Delimont "'suffers from a mental abnormality or personality disorder which makes it likely he will engage in repeated acts of sexual violence.'" The report also explained that Delimont's mental abnormality and personality disorder has not significantly changed so that it would be safe for him to be placed in a transitional release.

These findings are important because if Delimont's diagnosis were to change, and he no longer suffered from a significant psychological disorder, that conclusion might support his request for transitional release. See *In re Care & Treatment of Miles*, 47 Kan. App. 2d 429, 440-41, 276 P.3d 232 (2012) (finding there was probable cause for a transitional release hearing because two expert reports stated that Miles no longer met the definition of a pedophile); *In re Care & Treatment of Sipe*, 44 Kan. App. 2d 584, 594, 239 P.3d 871 (2010) (report stating patient had no significant psychological disorder supported transitional release). But here, Delimont's diagnoses include several significant psychological disorders, including pedophilic disorder, and these facts weigh against him in his request for transitional release.

Third, the report does not recommend transitional release because Delimont continues to place blame for his actions on others. On several occasions, when Delimont was asked to discuss his behavior that resulted in his sexual offenses, he responded by placing blame on the district court or by refusing to answer. The report also explained that Delimont did not understand that his sexual offenses affected his victims.

Even when considering the evidence in a light most favorable to Delimont, he has failed to show facts "sufficient to cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief that [his or her] mental abnormality or personality disorder had so changed that he [or she] was safe to be placed in transitional release." *In re Care & Treatment of Burch*, 296 Kan. at 226. The district court did not err in denying Delimont's petition on this ground.

## DID THE DISTRICT COURT ABUSE ITS DISCRETION WHEN IT DENIED DELIMONT'S REQUEST FOR THE APPOINTMENT OF AN INDEPENDENT EXAMINER UNDER THE KSVPA?

Delimont also argues that the district court abused its discretion when it denied his request to appoint an independent examiner as part of his annual review under the KSVPA.

*Standard of Review*

An appellate court reviews a district court's denial of an independent examination request under the KSVPA for an abuse of discretion. *In re Care & Treatment of Twilleger*, 46 Kan. App. 2d 302, 310, 263 P.3d 199 (2011). Judicial discretion is abused if the judicial decision is (1) unreasonable; (2) based on an error of law; or (3) based on an error of fact. *In re A.S.*, 319 Kan. 396, 400, 555 P.3d 732 (2024). The party asserting an abuse of discretion bears the burden of proof. *In re A.S.*, 319 Kan. at 400. Delimont does not claim that the district court made an error of law or fact in its ruling, so we consider whether no reasonable person would take the same position as the district court. 319 Kan. at 400.

*Discussion*

K.S.A. 59-29a08(c) provides for the appointment of an independent examiner as part of the annual review process under the KSVPA:

10

"The person may retain, or if the person is indigent and so requests the court may appoint, an examiner pursuant to K.S.A. 60-235, and amendments thereto, and the examiner shall have access to all available records concerning the person. If the person is indigent and makes a request for an examiner, the court shall determine whether the services are necessary and shall determine the reasonable compensation for such services. The court, before appointing an examiner, shall consider factors including the person's compliance with institutional requirements and the person's participation in treatment to determine whether the person's progress justifies the costs of an examination. The appointment of an examiner is discretionary."

The district court found there was not "good cause" to appoint an independent examiner:

"[T]he Respondent has made the most progress in this reporting period over all the annual review reports reviewed. While there have been some positive changes[,] work on identifying risk factors and mitigation strategy needs to be done in order to advance. Additionally, the Respondent[] needs to continue his work on emotional regulation and transparency as well [as] develop a completed Relapse Prevention Plan and testing as required by the program."

Delimont argues that the district court erred in denying his request for an independent examiner because without it, he would be "unable to refute the allegations in the report." But Delimont fails to address the factors the district court was required to consider in K.S.A. 59-29a08(c). The district court was required to consider "the person's compliance with institutional requirements and the person's participation in treatment to determine whether the person's progress justifies the costs of an examination." K.S.A. 59-29a08(c). It did so, noting Delimont's progress but concluding Delimont needed to continue to work on identifying risk factors and mitigation strategies. It also found that Delimont needed to "continue his work on emotional regulation and transparency as well [as] develop a completed Relapse Prevention Plan and testing."

11

The district court's findings are supported by the evidence in the record. Delimont has remained on Tier One of the three-tier program for many years. To move from Tier One, Delimont needs to complete relapse prevention plan requirements, work on understanding risk factors and mitigation efforts, address emotional regulation, and work on transparency. And although Delimont participated in his therapeutic groups and classes, he continues to lack the ability to address his underlying issues that caused him to offend. Delimont also fails to take responsibility for his actions and continues to place blame on others. Moreover, Delimont violated multiple program rules. A reasonable person could conclude that Delimont's progress in treatment was insufficient to justify the cost of an independent examination.

After considering the factors contained in K.S.A. 59-29a08(c), we find the district court did not abuse its discretion in denying the request for an independent examination.

Affirmed.